THE STATE EX REL. GO–JO INDUSTRIES, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Go–Jo Industries v. Indus.
Comm.* (1998), 83 Ohio St.3d 529.]

(No. 96–1018—Submitted October 13, 1998—Decided November 10, 1998.)

530

" * * *

---

*Buckingham, Doolittle & Burroughs, Timothy C. Campbell* and *Richard A. Hernandez,* for appellant.

*Betty D. Montgomery*, Attorney General, and *Patsy Thomas*, Assistant Attorney General, for appellee Industrial Commission.

*Ben Scheerer Law Offices* and *Thomas R. Pitts*, for appellee Gist.

---

***Per Curiam.*** The two specific safety requirements before us are power-disengagement requirements. Go–Jo concedes that there was no power-disengagement device at the location where claimant was injured. At issue is the applicability of those provisions and the evidentiary support underlying the commission's determination that they were violated. For the reasons to follow, we find that the commission did not abuse its discretion in assessing these penalties.

*Ohio Adm.Code 4121:1–5–05(C)(2)*

This section provides:

"All conveyors, where exposed to contact, shall be equipped with means to disengage them from their power supply at such points of contact."

Go–Jo opposes, on two grounds, the commission's conclusion that the Jones Cartoner was a conveyor. Go–Jo initially argues that this conclusion was barred by the commission's March 2, 1994 order. Go–Jo contends that the March 2 order specifically found that the Cartoner was not a conveyor, and that the commission was subsequently bound by that determination. Appellees dispute the order's conclusive effect, describing the order as simply interlocutory. We agree.

The March 2, 1994 order was generated by Go–Jo's request for reconsideration, and was promulgated pursuant to Ohio Adm.Code 4121–3–20(G), which permits rehearing in two instances—one of which is where there has been an obvious mistake of fact. In what is perhaps an inartfully worded order, the commission follows its conclusion that the Cartoner was not a conveyor with language setting a rehearing—the latter articulating its intent to subject claimant's VSSR application to further review. We have previously held that such a clear indicium of intent supports a finding that an order was interlocutory. See *State ex rel. Brewer v. Indus. Comm.* (1984), 12 Ohio St.3d 23, 12 OBR 20, 465 N.E.2d 389; *State ex rel. Draganic v. Indus. Comm.* (1996), 75 Ohio St.3d 461, 663 N.E.2d 929. Indeed, to consider the SHO's finding on the character of the Cartoner to be anything but nonbinding is irreconcilable with the SHO's grant of rehearing. A binding determination that the Cartoner was not a conveyor would have automatically rendered Ohio Adm.Code 4121:1–5–05(C)(2) inapplicable, eliminating the need for any further discussion.

Our holding is further supported by the mechanics of Ohio Adm.Code 4121–3–20(G) itself. If reconsideration is granted, the matter goes again to hearing. It

is the written order generated by *that* hearing which is, according to the express terms of Ohio Adm.Code 4121–3–20(G)(4), deemed final. We find, therefore, that the March 2, 1994 finding was interlocutory, and, pursuant to *Draganic,* not binding upon the commission.

Further, Go–Jo argues that there is not "some evidence" to support the August 22, 1994 conclusion that the Cartoner was a conveyor. Go–Jo contends alternatively that even if the Cartoner was a conveyor, it was an internal conveyor, which exempts Go–Jo from liability. Neither assertion has merit.

Ohio Adm.Code 4121:1–5–05 does not define "conveyor." Interpretation of that term was, therefore, within the commission's final jurisdiction. *State ex rel. Berry v. Indus. Comm.* (1983), 4 Ohio St.3d 193, 4 OBR 513, 448 N.E.2d 134. In this instance, the SHO adopted the definition of "conveyor" put forth by the American Society of Mechanical Engineers. Under that definition, "a conveyor" is:

"[A] horizontal, inclined, or vertical device for moving or transporting bulk material, packages, or objects, in a path predetermined by the design of the device, and having points of loading or discharge, fixed or selective. Included are skip hoists, and vertical reciprocating an[d] inclined reciprocating conveyors. Typical exceptions are those devices known as industrial trucks, tractors, trailers, tiering machines (except pallet load tierers), cranes, hoists, power shovels, power scoops, bucket drag lines, trenchers, platform elevators designed to carry passengers or an operator, manlifts, moving walks, moving stairways (escalators), highway or railway vehicles, cableways, tramways, dumbwaiters, pneumatic conveyors, robots, or integral transfer devices."

In finding that the apparatus at issue fell within this definition, the SHO relied on, among other things, photos of the Cartoner submitted at hearing. There was, therefore, "some evidence" supporting the SHO's finding.

Go–Jo alternately responds that even if the Cartoner was correctly found to be a conveyor, it was an "internal conveyor" to which no liability attaches, citing *State ex rel. Ford v. Indus. Comm.* (Oct. 6, 1992), Franklin App. No. 91AP–253, unreported, 1992 WL 281232. We again disagree.

The *Ford* decision—which we affirmed at 67 Ohio St.3d 121, 616 N.E.2d 228—is distinguishable from this case. *Ford* involved an employee who worked in a plant powerhouse, which supplied steam to the rest of the plant by way of coal-fired boilers. Coal was carried to the boilers by a series of enclosed drag bucket conveyors. On the date of injury, Ford and a co-worker were repairing one of those conveyors.

In order to determine which buckets were broken, Ford removed a hinged cover on top of the conveyor enclosure and observed the passing buckets as his

companion operated the conveyor. When a damaged bucket was finally spotted, Ford told his co-worker to stop the machine. Ford then climbed into the conveyor before his fellow employee had a chance to "lock out" the machine's power source. Ford was killed when the conveyor was unknowingly reactivated from a remote location.

Ford's widow alleged a violation of Ohio Adm.Code 4121:1–5–05(C)(2). Neither the commission nor the court of appeals found a violation of that section, and we affirmed that judgment. We reasoned:

"Ohio Adm.Code 4121:1–5–05(C)(2) mandates a disengagement device at points 'exposed to contact.' An object is 'exposed to contact' when its location, 'during the course of operation, is accessible to an employee in performance of his regular or assigned duty.' Ohio Adm.Code 4121:1–5–05(B)(11). [Ohio Adm. Code] 4121:1–5–05(C)(2), therefore, will not apply if the accident occurred in a spot that was not accessible during the course of operation.

"Because neither 'accessible' nor 'course of operation' is defined in the Revised or Administrative Code, the interpretation of these terms is within the commission's final jurisdiction. * * * In this case, decedent was killed inside an enclosed conveyor. If the conveyor and its attached drag buckets had been moving at the time, decedent could not have entered the enclosure. *Only* if the conveyor was *first* stopped could decedent have gained access to the area in which he died. Given the commission's duty to strictly construe specific safety requirements in the employer's favor * * *, the commission did not abuse its discretion in finding that a location which is accessible only during cessation of operation was not 'accessible' in the 'course of operation,' and was not made so merely because the conveyor *subsequently* started running." (Citations omitted; emphasis *sic*.) *Id.*, 67 Ohio St.3d at 122–123, 616 N.E.2d at 229–230.

The basis for our decision in *Ford* is inapplicable here. The decision in *Ford* did not rest on the mere fact that the conveyor was enclosed. Our decision instead was based on the inaccessibility of the disengagement device during the course of operation. Here, the location of the accident was readily accessible to claimant during the course of the Cartoner's operation. Thus, the circumstances that excused a violation of Ohio Adm.Code 4121:1–5–05(C)(2) in *Ford* do not exist here.

Considering all of the above, we rule that the commission did not abuse its discretion in finding a violation of Ohio Adm.Code 4121:1–5–05(C)(2).

*Ohio Adm.Code 4121:1–5–05(D)(1)*

This section provides:

"Means shall be provided at each machine, within easy reach of the operator, for disengaging it from its power supply."

In response to the finding of noncompliance, Go–Jo asserts two defenses: (1) that claimant was not the Cartoner's "operator," and (2) the practical impossibility of compliance. We find neither contention to be persuasive.

Go–Jo initially argues that because the Cartoner was automated, it had no "operator," thereby removing claimant from the scope of Ohio Adm.Code 4121:1–5–05(D)(1)'s protection. This contention, however, is undermined by our recent decision in State ex rel. Scott Fetzer Co., Halex Div. v. Indus. Comm. (1998), 81 Ohio St.3d 462, 692 N.E.2d 195. In Fetzer, the claimant, as here, had several responsibilities related to the employer's machine. During the course of those duties, claimant was severely injured when the machine's dies closed on him.

His employer asserted the automated nature of the machine as a defense—a defense that we rejected, writing:

"Fetzer also argues that claimant was not entitled to the protection of Ohio Adm.Code 4121:1–5–11(D)(6) because he was the 'tender,' not the 'operator' of the machine. This contention fails as well. Regardless of what Fetzer chose to call claimant, he was actively involved in the machine's operation. Claimant started, inspected, and cleaned the die. He operated the linkage mechanism and set die heights. He oiled the die and checked for defective parts. He was responsible for lodged parts and correcting malfunctions. He was not, therefore, a casual observer with no responsibility for or participation in the machine's function." Id. at 466, 692 N.E.2d at 197–198.

The same principles are equally applicable here. Neither the Cartoner's automation nor the necessity for mobility in claimant's performance of his job duties precludes a finding that he was indeed the machine's "operator."

Go–Jo also cites State ex rel. Owens Corning Fiberglas Corp. v. Indus. Comm. (1980), 62 Ohio St.2d 145, 16 O.O.3d 165, 404 N.E.2d 140, to support its position. In Owens–Corning, the claimant worked on an assembly line, folding fiberglass batts as they passed by on a conveyor belt. The next employee removed the fiberglass batts and stacked them, whereupon a third worker transferred the fiberglass batts to an adjacent packing machine. While claimant was working at a separate conveyor, he somehow placed his foot onto the packing machine and was hurt.

In alleging a violation of the same specific safety requirement now before us, claimant in Owens Corning alleged that he was the operator of the packing machine. We disagreed with claimant's argument that the term "operator" applied to everyone "who work[s] at a machine and whose activity is necessary for [the machine's] operation." Id. at 146, 16 O.O.3d at 166, 404 N.E.2d at 141. Stressing that claimant was working at a conveyor separate from the packing machine, we found that claimant was not covered by the safety provision.

Go–Jo's reliance on *Owens Corning* is misplaced. In the case at bar, claimant was working *at* the machine which injured him—the Jones Cartoner. This is not a situation where claimant was injured by equipment apart from that at which he was working. *Owens Corning* does not, therefore, compel a finding that claimant was not the "operator" of the Cartoner. Accordingly, we find no abuse of discretion in this regard.

Finally, Go–Jo directs us to the following passage from *State ex rel. Harris v. Indus. Comm.* (1984), 12 Ohio St.3d 152, 154, 12 OBR 223, 225, 465 N.E.2d 1286, 1288:

"It would be impossible to comply with Ohio Adm.Code 4121:1–5–05(D)(1) if the controls had to be within easy reach of all possible positions in which the operator could find himself around the machine. The commission acted reasonably in interpreting the rule to refer to the position in which the operator is normally situated."

*Harris* articulates an important workers' compensation ruling. However, where—as here—there is "some evidence" supporting the conclusion that claimant's presence at the site of injury was not abnormal, irregular, or unusual in the performance of his duties, the commission did not abuse its discretion in distinguishing *Harris*.

For all of these reasons, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.