THE STATE EX REL. PRESSWARE INTERNATIONAL, INC., APPELLANT,
*v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Pressware Internatl., Inc. v. Indus. Comm.* (1999), 85 Ohio St.3d 284.]

(No. 96–2600—Submitted January 26, 1999—Decided April 7, 1999.)

"* * *

286

Vorys, Sater, Seymour & Pease and Robert E. Tait, for appellant.

Betty D. Montgomery, Attorney General, and Michael A. Vanderhorst, Assistant Attorney General, for appellee Industrial Commission.

Gibson & Robbins–Penniman and Corrine S. Carman, for appellee Marjorie Sheerin.

---

**Per Curiam.** Pressware contests the two violations assessed against it. Upon review, we find that the commission abused its discretion as to Ohio Adm.Code 4121:1–5–10(D)(2)(d)(i) only.

Ohio Adm.Code 4121:1–5–10(E)(1) provides:

"The employer shall furnish and require the use of hand tools for freeing and removing stuck work or scrap pieces from the dies, so that no employee need reach into the point of operation for such purposes."

Pressware contends that it provided employees with needle nose pliers and tongs to remove paper jams. Hearing testimony from claimant and Robert Lilly,

however, indicated that those tools were too bulky to fit into the cavity where jams occurred and were not, therefore, functional. "Some evidence" thus supports the commission's determination that these tools did not satisfy the specific safety requirement.

Pressware also argues that claimant had access to a "bar tool" to clear jams. The commission, however, as sole evaluator of evidentiary weight and credibility, did not find this assertion credible. The commission correctly observed that neither the commission safety investigator nor Pressware's safety investigator mentioned in their reports finding such a tool. Claimant, moreover, denied knowing of such a tool, as did her supervisor, Alice Phillips. This information again provides "some evidence" that the required tools were not provided.

Pressware last proposes that any arguable violation should be excused by claimant's negligence in sticking her hand into the die-cutting area. This proposition fails. Specific safety requirements are " 'intended to protect employees against their own negligence and folly as well as provide them a safe place to work.' " *State ex rel. Cotterman v. St. Marys Foundry* (1989), 46 Ohio St.3d 42, 47, 544 N.E.2d 887, 892, quoting *State ex rel. U.S. Steel Corp. v. Cook* (1983), 10 Ohio App.3d 183, 186, 10 OBR 254, 257–258, 461 N.E.2d 916, 919. Thus, unless a claimant deliberately circumvented an otherwise complying safety device, *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.* (1988), 37 Ohio St.3d 162, 524 N.E.2d 482, or refused to use employer-provided safety equipment, *Kale v. Indus. Comm.* (May 3, 1984), Franklin App. No. 83AP–968, unreported, 1984 WL 5731, an employee's conduct is not relevant to a VSSR determination. Here, the commission found that claimant was never given appropriate hand tools. It did not, therefore, err in finding that principles of unilateral negligence were inapplicable.

Ohio Adm.Code 4121:1–5–10(D)(2)(d)(i) provides:

"(D) Safeguarding the point of operation.

"(1) General Requirements

"(a) It shall be the responsibility of the employer to provide and require the usage of 'point of operation guards' or properly applied and adjusted 'point of operation devices' on every operation performed on a mechanical press. (See table 4121:1–5–10(D) to this rule.)

" * * * *

"(2) Point of operation guards.

" * * * *

"(d) Interlocked press barrier guard.

"(i) When used, an interlocked press barrier guard shall be attached to the press frame or bolster plate and shall be interlocked with the press clutch control

so that the clutch cannot be activated during normal production unless the guard itself, or the hinged or movable sections of the guard are in position to conform to the requirements of table 4121:1–5–10(D) to this rule."

Pressware initially maintains that the specific safety requirements protection applied only to "normal production" work, of which clearing paper jams was not a part. This argument fails.

The Code of Specific Safety Requirements does not define "normal production," which places its interpretation in the commission's hands. See *State ex rel. Go–Jo Industries v. Indus. Comm.* (1998), 83 Ohio St.3d 529, 700 N.E.2d 1264. Claimant, Lilly, and Phillips all testified that clearing paper jams was the operator's responsibility and was a regular part of the job. This was reinforced by Pressware's own actions in providing tools, albeit unusable ones, for clearing paper jams. The commission did not, therefore, abuse its discretion in finding that this act fell within the course of "normal production." A finding of applicability was accordingly appropriate.

Having found applicability of the specific safety requirements to this case, we now consider whether Pressware complied with these requirements. An investigation by Pressware subsequent to the injury revealed that the interlock had broken. Pressware, nevertheless, argues that the malfunction constituted a first-time failure that immunizes it from culpability under *State ex rel. M.T.D. Products, Inc. v. Stebbins* (1975), 43 Ohio St.2d 114, 72 O.O.2d 63, 330 N.E.2d 904. The appellees disagree, reasoning that the problems during Lilly's shift put Pressware on notice that something was wrong with the interlock.

Pressware responds that notice cannot be imputed, since the defect that Lilly reported was not the same as that which injured claimant. Lilly complained that the press was shutting down when it was supposed to be running, not that it kept running when it was supposed to be shut down. There is no evidence that press 107's shutdown devices had ever failed before, and it is this fact that sustains Pressware's argument.

In determining that certain other specific safety requirements had *not* been violated, the commission made two relevant findings. First, it found that Pressware did provide four stop buttons and a main power disconnect switch on press 107. Second, it found that the *only* way the press could be restarted after the stop button was pushed was by again hitting the start button.

This is critical because claimant testified that she did hit the stop button before she proceeded to the gate area and that the press indeed stopped. Thus, if the stop button worked—as Pressware's maintenance superintendent, Dan Lyons, said it did—it did not matter from a mechanical standpoint whether the interlock was broken. It appears that the interlock could not reactivate the press—only the start button could.

This makes the commission's order internally inconsistent and opens to debate the question of whether the broken interlock was indeed the cause of claimant's injury. More relevant to Pressware's argument is the effect of these findings on the commission's imputation of knowledge to Pressware. If the stop buttons were fully functional, and it appears that they were, there was no reason for Pressware ever to guess that a broken interlock could have reactivated the press. As such, immunity under *M.T.D.*, *supra*, shields Pressware from a violation of Ohio Adm.Code 4121:1–5–10(D)(2)(d)(i).

The judgment of the court of appeals is hereby reversed in part and affirmed in part. That portion of the judgment upholding the violation of 4121:1–5–10(D)(2)(d)(i) is reversed. The rest of the judgment is affirmed.

*Judgment reversed in part*
*and affirmed in part.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

RESNICK, J., dissents and would affirm the judgment of the court of appeals.