THE STATE, EX REL. HARRIS, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as State, ex rel. Harris, *v.* Indus. Comm. (1984), 12 Ohio St. 3d 152.]

(No. 83-1569—Decided July 25, 1984.)

*Mr. David J. Boyd,* for appellant.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Mr. Douglas M. Kennedy* and *Mr. Lee M. Smith,* for appellee Industrial Commission.

*Messrs. Dinsmore & Shohl* and *Mr. Kent W. Seifried,* for appellee U.S. Playing Card Co.

*Per Curiam.* It is well-established that mandamus will not lie to vacate an order of the commission unless that order constitutes an abuse of discretion. *State, ex rel. Mees,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 128, 130 [58 O.O.2d 319]. The interpretation of a specific safety requirement is within the sound discretion of the commission and will not be overturned except where the record contains no evidence upon which its findings could be based. *State, ex rel. Allied Wheel Products, Inc.,* v. *Indus. Comm.* (1956), 166 Ohio St. 47, 50 [1 O.O.2d 190].

Appellant argues that the commission's interpretations of the three safety requirements here in question are unreasonable and not supported by the

evidence. Appellees argue, to the contrary, that the commission's determinations were based upon facts of record.

## I

Ohio Adm. Code 4121:1-5-05(H) provides that, "[p]ower driven feed rolls when exposed to contact, shall be guarded so as to prevent the hands of the operator from coming into contact with the in-running rolls at any point." All parties concede that the rolls between which appellant's hand and arm became caught were power driven. The controversy centers upon whether they are feed rolls.

"Feed Rolls" are defined, pursuant to Ohio Adm. Code 4121:1-5-01(B)(13), as "rolls which perform no other function than to feed material to the point of operation." It is clear from the facts of this case that the ink rolls in question did, in fact, feed ink to the point in the press where the printing took place. The question presented, therefore, is whether the commission abused its discretion in determining that the rolls were nevertheless *not* feed rolls.

Appellees cite Ohio Adm. Code 4121:1-5-01(B)(27), which defines the "point of operation" as "the point or points at which material is placed in or removed from the machine." From this definition appellees reason that the ink rolls in question are not feed rolls because they perform functions beyond that specified in the definitions, *i.e.*, they move the ink well beyond the point of entry, deep into the machine, to a point one step removed from the actual printing process. Appellees also point to the fact that the ink rolls cause the ink, so moving, to be spread across the rolls for even application in the printing process. This, they contend, illustrates a secondary function which, according to Ohio Adm. Code 4121:1-5-01(B)(13), feed rolls cannot perform.

Appellant submits that the clear facts of the case illustrate that the ink rolls are, in fact, feed rolls. We agree. Ohio Adm. Code 4121:1-5-10(B)(43) defines the "point of operation" as "the area of the press where material is actually positioned and work is being performed during any process, * * *." This definition, although referring particularly to mechanical power presses, provides a more sensible approach to the problem presented by the facts of the instant appeal. The ink rolls in question clearly feed material to the area of the press where work is being performed during the printing process.

The commission has the discretion to interpret its own rules; however, where the application of those rules to a unique factual situation gives rise to a patently illogical result, common sense should prevail. Appellant's contention that Ohio Adm. Code 4121:1-5-05(H) was violated is well-supported by the facts. The commission abused its discretion in determining otherwise.

## II

Ohio Adm. Code 4121:1-5-05(D)(1) states that, "[m]eans shall be provided at each machine, within easy reach of the operator, for disengaging it from its power supply. * * *" Appellant could have greatly minimized his injuries had he been able to reach the controls and disengage the press from its

power supply when his hand became caught. The record shows that the controls, although within easy reach of the operator *under normal circumstances,* could not be reached by appellant precisely because of his precarious position. Appellant argues that the rule is useless as a safety rule if it does not apply to such extraordinary circumstances as those under which he found himself on November 12, 1976.

Appellees insist that it was reasonable for the commission to interpret the rule with regard to circumstances where the operator is situated for his regular duties. They argue that a different construction encompassing any or all possible situations would deprive the employer of the specificity necessary for it to comply with the particular requirement. *State, ex rel. Trydle,* v. *Indus. Comm.* (1972), 32 Ohio St. 2d 257 [61 O.O.2d 488].

Appellees' point is well-taken. It would be impossible to comply with Ohio Adm. Code 4121:1-5-05(D)(1) if the controls had to be within easy reach of all possible positions in which the operator could find himself around the machine. The commission acted reasonably in interpreting the rule to refer to the position in which the operator is normally situated.

### III

Ohio Adm. Code 4121:1-5-05(D)(2) states in pertinent part that, "[t]he employer shall furnish and the employees shall use a device to lock the controls in the 'off' position or the employer shall furnish and the employees shall use warning tags when machines are shut down for * * * cleaning." All parties concede that it was necessary for appellant to clean the machine while it was running. It was also conceded that there were no warning tags on the press. Appellant contends that the appellee-employer violated Ohio Adm. Code 4121:1-5-05(D)(2). Appellees argue that the machine was not "shut down for * * * cleaning" and that Ohio Adm. Code 4121:1-5-05(D)(2) does not apply.

Webster's New Collegiate Dictionary (1975) defines "shutdown," as "the cessation or suspension of an activity (as work in a mine or factory)." Appellant essentially argues that the press was, in fact, shut down for purposes of the application of Ohio Adm. Code 4121:1-5-05(D)(2) because the activity which the press performed, printing, had been suspended. The press was running merely to allow the cleaning fluid which appellant was applying to dry. Appellant urges this court to find that the press was "shut down" because it was not engaged in the printing process.

The purpose of this safety rule is to guard against the possibility that a machine might turn on unexpectedly, thereby catching a repairman or another nearby person unawares. While locking controls are preferred, the alternative of using warning tags is made available to alert such persons to the fact that the machine's controls are not or cannot be locked in the "off" position and that, therefore, the machine might turn on suddenly. It was reasonable for the commission to hold that the rule does not apply when the machine is already running, because the fact of its running, itself, provides adequate warning.

## IV

The commission's interpretation of Ohio Adm. Code 4121:1-5-05(H) and its application of the related definitions are contrary to the well-documented and uncontested facts of the case. The record contains no evidence to support the commission's finding that the appellee-employer did not violate Ohio Adm. Code 4121:1-5-05(H). With regard to that specific safety requirement, the judgment of the court of appeals is reversed and the writ prayed for is granted.

The commission's interpretations of Ohio Adm. Code 4121:1-5-05(D)(1) and (2) are supported by reason and the facts of record. In that regard the judgment of the court of appeals is affirmed and the writ prayed for is denied.

*Judgment reversed in part*
*and affirmed in part.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., concurring in part and dissenting in part.

HOLMES, J., concurring in part and dissenting in part. I dissent from that portion of the majority opinion which deals with power driven feed rolls. In my view, the Industrial Commission did not abuse its discretion in finding that the ink rolls were not power driven feed rolls under Ohio Adm. Code 4121:1-5-05(H).

Ohio Adm. Code 4121:1-5-01(B)(13) defines "feed rolls" as those "rolls which perform no other function than to feed material to the point of operation." The ink rolls on appellee's printing press do not satisfy this definition in two respects.

First, the ink rolls clearly served more than one function. Their primary purpose was to spread and distribute ink used in the printing process in an even manner to prevent build-up or smearing.

Second, the rolls do not advance or feed ink to the point of operation on the printing press. In fact, the rolls merely advance ink from a storage container to a metal plate roll which then transfers the ink to a middle cylinder encased with a rubber blanket. Finally, the blanket imprints the image onto the paper material at the point of operation. Since there are a number of intervening stages between the time the ink rolls spread and transfer the ink and the time an image is printed, the rolls clearly do not feed ink to the point of operation as required by Ohio Adm. Code 4121:1-5-01(B)(13).

Accordingly, I would affirm the judgment of the court of appeals on both issues.