THE STATE EX REL. UNITED FOUNDRIES, INC., APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. United Foundries, Inc. v. Indus. Comm.*, 101 Ohio St.3d 207, 2004-Ohio-704.]

(No. 2003–1496—Submitted February 3, 2004—Decided March 3, 2004.)

Per Curiam.

{¶ 1} Appellee-claimant Richard Crnarich began working for appellant, United Foundries, Inc., in 1988. From 1989 through 1999, he worked primarily in the mold department. One of his duties involved applying coatings to the interior of molds that were to be used to make steel rolls.

{¶ 2} The molds had three components—the drag, the chill, and the cope—that were stacked vertically, with the cope on top. The cope in use in 1999 had a concrete lining. To prevent the molten steel from adhering to the lining, the lining first had to be coated, in this case with an alcohol-based substance called Velvalite. Once the cope was coated, the employee then had to burn off the Velvalite by tossing a burning paper into the cope, where it would ignite violently. The entire process would be repeated before the cope was ready to receive molten steel.

{¶ 3} As its function implies, Velvalite is extremely flammable. It has a flash point of 53 degrees Fahrenheit. Its material safety data sheet also warned that "[v]apors are heavier than air and may travel along the ground or may be moved

by ventilation and ignited by pilot lights, other flames, sparks, heaters, smoking, electric motors, static discharge, or other ignition sources at locations distant from material handling point. Never use welding or cutting torch on or near drum (even empty) because product (even just residue) can ignite explosively."

{¶ 4} On June 24, 1999, claimant carried a bucket of Velvalite to a waiting cope. Evidence conflicts as to whether it was a three- or five-gallon bucket, but all agree that it was plastic and had no lid. Claimant climbed the ladder to the top of the five-and-a-half-foot-tall cope and began to swab the inside with Velvalite. For reasons unknown, the cope exploded. The claimant was knocked from the ladder and the contents of the bucket covered claimant and ignited. Claimant was severely burned and suffered a litany of other health problems as a result.

{¶ 5} After claimant's workers' compensation claim was allowed, he filed an application alleging numerous specific safety requirement violations, including Ohio Adm.Code 4121:1–5–07(M):

{¶ 6} "Portable safety containers shall be provided for handling flammable liquids with a flash point (closed cup) below 138.2 degrees Fahrenheit in quantities of one gallon or more. The containers shall be legibly marked 'flammable'."

{¶ 7} At a hearing before appellee Industrial Commission of Ohio, United Foundries asserted that the provision did not control. It proposed that it was not only the capacity of the container that established applicability but also the amount of liquid in the container at the time of the accident. Because claimant could not establish that there was more than one gallon of Velvalite in the bucket when the accident occurred, United Foundries maintained that the provision did not govern.

{¶ 8} The commission disagreed and found a violation. This prompted United Foundries to file a complaint in mandamus in the Court of Appeals for Franklin County. Speaking through its magistrate, the court of appeals rejected United Foundries' argument, writing:

{¶ 9} "Under relator's interpretation of the safety rule, its duty to provide a safety container arose only when the Velvalite was poured into a container at or above the one gallon mark; correspondently [sic], its duty would be extinguished when the Velvalite volume fell below the gallon mark during the process of applying the mixture. This, under relator's interpretation of the safety rule, its duty to its employee would rise and fall with the changing volume of the Velvalite as it was consumed during the work process.

{¶ 10} "In the magistrate's view, the commission was not required to adopt, even under strict construction principles, such an unworkable view of the employer's duty to its employees under the rule. The commission could view the

employer's duty to provide a safety container as arising when the employer knew or should have known that its employee would be handling a gallon or more of a flammable liquid. The duty to provide a safety container would logically remain with the employer regardless of the rise and fall of the volume of a flammable liquid being handled at any given time.

{¶ 11} "In his order, the [staff hearing officer] attempted to explain his reason for rejecting the employer's view of the safety rule. The capacity of the non-safety containers provided by the employer for use in handling the flammable liquid was indeed highly relevant to a determination that the employer had a duty under the rule to provide a safety container.

{¶ 12} "It can easily and reasonably be inferred from the undisputed evidence that the employer provided three and five gallon buckets for handling the flammable liquid, that the volume of the liquid being carried in the buckets was at times one gallon or more. It would make no sense for an employer to provide five gallon buckets as an alternative to the three gallon buckets if the worker was never required to handle a gallon of flammable liquid at a time. That the employer provided five gallon non-safety buckets as an alternative to the three gallon non-safety buckets creates a strong inference that its employees typically handled a gallon or more of flammable liquid at any given time."

{¶ 13} This cause is now before this court upon an appeal as of right.

{¶ 14} At issue is the commission's interpretation of Ohio Adm.Code 4121:1–5–07(M). Upon review, we concur in the magistrate's cogent analysis and affirm the judgment of the court of appeals.

{¶ 15} Interpreting specific safety requirements is within the commission's sound discretion. *State ex rel. Harris v. Indus. Comm.* (1984), 12 Ohio St.3d 152, 12 OBR 223, 465 N.E.2d 1286. While strict construction requires that all *reasonable* doubts in interpreting a specific safety requirement be resolved in the employer's favor (*State ex rel. Burton v. Indus. Comm.* [1989], 46 Ohio St.3d 170, 545 N.E.2d 1216), a corollary forbids an interpretation that "gives rise to a patently illogical result." *Harris,* 12 Ohio St.3d at 153, 12 OBR 223, 465 N.E.2d 1286. Where it does, common sense must prevail. Id.

{¶ 16} In this case, United Foundries' proposed interpretation generates a patently illogical result. As the magistrate observed, under United Foundries' construction, applicability can be dependent on a single dip of the brush as the amount in the container descends to the one-gallon mark. Moreover, since there is no violation without an injury and where, as here, injury is the result of combustion, it will often be impossible to establish the amount of liquid in the

container before it ignited. Such an interpretation is vague, unworkable, and illogical.

{¶ 17} The judgment of the court of appeals is hereby affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

———————

Bricker & Maxfield, L.L.C., and Douglas M. Bricker, for appellant.

Slater, Zurz & Gilbert and Walter Kaufmann, for appellee Richard Crnarich.

Jim Petro, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for appellee Industrial Commission.