DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, George Lange, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's application for an award for the violation of a specific safety requirement ("VSSR"), and to order that relator is entitled to such an award.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Relying upon State ex rel. Harris v.Indus. Comm. (1984), 12 Ohio St.3d 152, the magistrate found that the commission did not abuse its discretion when it determined that Ohio Adm. Code 4121:1-5-05(D)(2) did not apply. The magistrate found that by its express terms, Ohio Adm. Code 4121:1-5-05(D)(2) only applied when the machine was "shut down for repair, adjusting, or cleaning." Because the machine at issue here was not shut down when the dies were being changed, this administrative code provision was inapplicable. Therefore, the commission did not abuse its discretion in denying relator's application for an additional award for a VSSR.
 {¶ 3} Relator filed an objection to the magistrate's decision arguing that the magistrate's decision misapplies Ohio case law and nullifies the application of Ohio Adm. Code 4121:1-5-05(D)(2). In essence, relator takes issue with the magistrate's interpretation of the phrase "shut down." Relator contends that the machine was effectively shut down because it was not engaged in normal operation. Therefore, relator argues that Ohio Adm. Code 4121:1-5-05(D)(2) does apply. We disagree.
 {¶ 4} The Supreme Court of Ohio in Harris, supra, expressly rejected the argument that a printing press that was kept running during the process of cleaning was effectively shut down because it was not engaged in the printing process at the time of the claimant's injury. The court held that Ohio Adm. Code 4121:1-5-05(D)(2) did not apply because the printing press was kept running during the cleaning process.
 {¶ 5} As the magistrate points out, the machine at issue here was kept running when relator and other employees were in the process of changing dies. There was also evidence before the commission that it was necessary to operate the machine in order to change the dies. Therefore, like the printing press in Harris, the machine here was not shut down and Ohio Adm. Code 4121:1-5-05(D)(2) is inapplicable. Relator's attempts to distinguish Harris are unpersuasive. We also note that a VSSR award is in the nature of a penalty against the employer and safety requirements must be strictly construed in reviewing applications for such awards. State exrel. Whitman v. Indus. Comm. (1936), 131 Ohio St. 375; State ex rel.Brilliant Elec. Sign Co. v. Indus. Comm. (1979), 57 Ohio St.2d 51. All reasonable doubts concerning the interpretation of a safety requirement are to be construed in the employer's favor. State ex rel. Watson v.Indus. Comm. (1986), 29 Ohio App.3d 354, 358. For the reasons contained in the magistrate's decision, relator's objections are overruled.
 {¶ 6} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled;
 writ of mandamus denied.
 Brown, P.J., and McGrath, J., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. George Lange, :
 Relator, :
 v. : No. 04AP-1330
Industrial Commission of Ohio, : (REGULAR CALENDAR)
 :
General Motors Lordstown Fabricating :
and NAO Lordstown Assembly, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on June 14, 2005 Boyd, Rummell, Carach Curry Co., L.P.A., and Walter Kaufmann, for relator.
Jim Petro, Attorney General, and Derrick L. Knapp, for respondent Industrial Commission of Ohio.
Vorys, Sater, Seymour and Pease LLP, and Kenneth A. Stump, for respondent General Motors Corporation.
 IN MANDAMUS {¶ 7} Relator, George Lange, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for an award for the violation of a specific safety requirement ("VSSR"), and ordering the commission to find that relator is entitled to a VSSR award.
Findings of Fact:
 {¶ 8} 1. At the time of his injury, relator was part of a five-man crew whose responsibilities were to change the forming dies in a series of metal forming presses on a press line at respondent NAO Lordstown Assembly ("General Motors"). Relator was working at the back of the press. A co-worker and fellow team member, Dale Hall, was manning the controls at the front of the press. From his position at the control panel, Hall could not see relator at the back of the press. A third team member, John Schofield, was the die truck driver. According to relator's affidavit, his injury happened as follows:
On the day of the injury of record I was working with Dale Hall. We were changing a die in the JE2 Press. The first die had been removed. Two (2) truck drivers, as we call them, had placed the die in the press. I was working on the back side of the press. Dale was working the front of the press. I checked to make sure the die was lined up properly. The ram was in the up position. I told Dale the die was lined up properly. I placed the bolts in the bottom ram but did not tighten them. Dale brought down the ram by inching it. He then went to the middle of the die on his side. His moving to the middle of the die indicated that we are ready to put the bolts in the top of the die. The bolts were on the ledge of the ram. I reached with my left to retrieve the bolts. As I did so there was a distraction behind me. I looked to see what was happening behind me. In that split second, Dale went to the panel and cycled the press, causing the ram to raise and again lower, this time catching my left hand between the ram and the die.
 {¶ 9} Hall's affidavit corroborates relator's explanation as Hall stated the following:
I was working the front of the press and George (the claimant) was working the back of the press. John was the die truck driver. John brought the die to the JE-2 press and set it in. After positioning the die into the press, John back[ed] up and indicated that it was time to bring the press down on top of the die. This is done so that the top portion of the die can be clamped onto the press. The shut for the die that was taken out and the one being put in was the same. So no adjustments had to be made to the space for the die and there was no need to inch the press down. When I got the indication from the die truck driver that the die was in place I hit the two (2) buttons to lower the press. Both of the buttons must be hit at the same time to activate the press. From the control panel and with the die in place you cannot see what is happening on the back side of the press. After the press came down, I could hear George screaming. When I realized he was caught in the press I raised it back up. He had his hand caught between the top of the top die and the press when I lowered it. I also noticed when I went to help George that one clamp had been put on the bottom portion of the die, presumably by George.
 {¶ 10} 2. Relator's claim has been allowed for the following conditions: "Crushing injury of hand, left; injury ulnar vessels, left; injury radial vessels, left; injury ulnar nerve, left; multiple fractures hand-open, left; fracture carpal bone nec-closed, left; adhesive capsulitis, left shoulder; adjustment disorder."
 {¶ 11} 3. On February 11, 2003, relator filed an application for a VSSR ultimately asserting that his injuries were caused as a result of a violation of Ohio Adm. Code 4121:1-5-05(D)(2) and asserting that the press should have been locked out at the time of relator's injuries.
 {¶ 12} 4. The standard practice at General Motors for die setting was to keep the press powered-up and running while the previous dies were being removed and replaced by new dies. The members of the die setting team were then responsible for making sure the dies were properly fitted into the press. Everyone agrees that one of the final steps of the die setting process is to lower the press in "inch mode" where the press is lowered slowly, before cycling, to insure that the die has been properly positioned.
 {¶ 13} 5. General Motors had safety procedures in place which required employees to utilize "danger tags" while setting or pulling a die. This procedure required the employees to utilize their danger tags as a sign to other workers that they had not yet completed their task. Furthermore, General Motors' procedures provided further that, before the press was cycled, the employees should be certain that no one else was working on the press.
 {¶ 14} 6. At the time of relator's injury, the employees were not utilizing danger tags and it was undisputed that Hall, who was operating the press, could not see behind the press to know whether or not relator was clear before Hall cycled the press.
 {¶ 15} 7. Relator's application was heard before a staff hearing officer ("SHO") on July 28, 2004, and resulted in an order denying relator's application for an additional award for a VSSR as follows:
On the IC-8 Application filed 2/11/2003 for an Additional Award for Violation of a Specific Safety Requirement, the injured worker alleged a violation of specific safety requirement set forth in Ohio Administrative Code Section 4121:1-5-05(D)(2), which reads a[s] follows:
When machines are shut down.
The employer shall furnish and the employees shall use a device to lock the controls in the "off" position or the employer shall furnish and the employees shall use warning tags when machines are shut down for repair, adjusting, or cleaning.
The Staff Hearing Officer also finds that, because the injured worker alleged a violation of Ohio Administrative Code Section 4121:1-5-05(D)(2), the injured worker has, in effect, alleged a violation of Industrial Commission Regulation IC-5-03-07(B).
In applying the facts to the alleged code sections, the Staff Hearing Officer specifically finds that these provisions do not apply because the injured worker has not established that the machine was shut down for repair, adjusting, or cleaning. In this case, the Staff Hearing Officer finds that the injured worker and two coworkers were operating the JE-2 Press at the time of the injury. This finding is based on the injured worker's testimony at hearing * * *, the injured worker's affidavit * * *, and the coworker's affidavit * * *.
In applying the regulation/code section to the facts of this claim, the Staff Hearing Officer finds that the injured worker has failed to establish that the JE-2 Press was shut down for repair, adjusting, or cleaning. Based upon a review of the injured worker's testimony at hearing and the affidavits, the Staff Hearing Officer specifically finds that the press was in operation at the time of the injury. There has been no evidence submitted to the record to indicate that the JE-2 Press wasshut down for repair, adjusting, or cleaning. The evidence indicates that at the time of the injury, the JE-2 Press was in operation because the die was being changed, and the press cannot be completely shut down while the die is being changed per the injured worker's 1/12/2004 affidavit, paragraph #4.
Because the injured worker has failed to establish that the alleged code sections apply to the facts of this claim, the Staff Hearing Officer finds that the injured worker has failed to establish that the employer violated Ohio Administrative Code Section 4121:1-5-05(D)(2) or Industrial Commission Regula-tion IC-5-03-07(B). The Staff Hearing Officer finds that the employer did not violate any specific safety requirement.
For the foregoing reasons, the injured worker's IC-8 application is hereby denied in its entirety.
(Emphasis sic.)
 {¶ 16} 8. Relator's request for rehearing was denied by order of the commission mailed October 30, 2004.
 {¶ 17} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 18} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 19} In regard to an application for an additional award for a VSSR, relator must establish that an applicable and specific safety requirement exists which was in effect at the time of the injury, that the employer failed to comply with the requirement, and that the failure to comply was the cause of the injury in question. State ex rel. Trydlev. Indus. Comm. (1972), 32 Ohio St.2d 257.
 {¶ 20} The determination of whether a claimant's injury resulted from the employer's failure to comply with a specific safety requirement is a factual determination within the final jurisdiction of the commission subject to correction in mandamus only upon a showing of an abuse of discretion. State ex rel. Allied Wheel Products, Inc. v. Indus. Comm.
(1956), 166 Ohio St. 47. Where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Burley v. Coil Packing,Inc. (1987), 31 Ohio St.3d 18.
 {¶ 21} Relator asserted that General Motors had violated not only its own policies but also Ohio Adm. Code 4121:1-5-05(D)(2) which provides, in pertinent part, as follows:
Machinery control.
* * *
When machines are shut down.
The employer shall furnish and the employees shall use a device to lock the controls in the "off" position or the employer shall furnish and the employees shall use warning tags when machines are shut down for repair, adjusting, or cleaning.
 {¶ 22} The above rule specifically requires that when machines are "shut down for repair, adjusting, or cleaning," the controls must be either locked in the off position or warning tags indicating that the machine is shut down must be placed on the machine. This is commonly known as the "lock out/tag out procedure."
 {¶ 23} In State ex rel. Harris v. Indus. Comm. (1984),12 Ohio St.3d 152, 154, the Supreme Court of Ohio explained the purpose of the above Ohio Administrative Code provision as follows: "The purpose of this safety rule is to guard against the possibility that a machine might turn on unexpectedly, thereby catching a repairman or another nearby person unawares."
 {¶ 24} In Harris, the claimant was cleaning an offset printing press when his right hand and arm were drawn into the ink rollers. The evidence established that the press was kept running during the cleaning process. Claimant had argued that the phrase "shut down for repair, adjusting, or cleaning" found in Ohio Adm. Code 4121:1-5-05(D)(2) should be construed in such a way that the press was actually "shut down" because it was not engaged in the printing process, even though it was necessary to keep the press running to allow the cleaning fluid which claimant was applying to dry. The commission rejected the claimant's argument that the press was "shut down" and found that the Ohio Administrative Code provision did not apply. The Supreme Court of Ohio agreed.
 {¶ 25} The same rationale applies to the present case. Pursuant to the affidavits in the record, it was necessary to keep the press running during the die setting procedures. As such, as in Harris, the commission did not abuse its discretion when it determined that the press was not "shut down for repair, adjusting, or cleaning," and that the Ohio Administrative Code provision did not apply. The fact that General Motors itself had a policy in effect which could have prevented relator's injuries, and General Motors now requires that the team member at the controls verbally confirm that all other team members are clear of the press before the press is cycled, does not require the commission to read those requirements into the specific safety requirements provided by the Ohio Administrative Code. While employers are required to comply with the specific safety requirements found in the Ohio Administrative Code, employers are also permitted to provide additional safety measures for their employees. However, the violation of additional safety procedures not found within the Ohio Administrative Code does not constitute a VSSR.
 {¶ 26} Based on the forgoing, this magistrate finds that relator has not demonstrated that the commission abused its discretion in finding that the press was not shut down at the time of his injuries and that Ohio Adm. Code 4121:1-5-05(D)(2) did not apply and relator's request for a writ of mandamus should be denied.