DECISION
{¶ 1} Relator, Kimberly Metcalfe, the surviving spouse of Nicholas E. Metcalfe, Sr., commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying her application for *Page 2 
an award of alleged violations of specific safety requirements ("VSSR") and to enter a VSSR award against the employer.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In his decision, the magistrate concluded the commission did not abuse its discretion in determining that any failure of the employer to comply with former Ohio Adm. Code 4121:1-5-05(D)(2) was not the proximate cause of the industrial accident that resulted in the death of relator's spouse.
 {¶ 3} Relator filed objections to the magistrate's decision. Initially, relator contends the magistrate "erred by failing to address the fact that the commission misinterprets State ex rel. MTD Products v.Stebbins (1975), 43 Ohio St.2d 114, which was a basis for the Industrial Commission's denial of Metcalfe's application." (Objections, ii.) Contrary to relator's contentions, the magistrate properly concluded the staff hearing officer's reliance on MTD Products was unnecessary to his ultimate holding that a violation of the safety rule was not the proximate cause of the fatal accident. "Thus, relator's challenge to the [staff hearing officer's] application of M.T.D. Products is not truly an issue before this court." (Magistrate's Decision, ¶ 36.)
 {¶ 4} Relator next contends "the magistrate injected a new theory of defense to Metcalfe's application" by discussing the second option under Ohio Adm. Code 4121:1-5-05(B)(2), warning tags. (Objections, iii.) Relator's contention is unavailing. The magistrate's discussion of warning tags did not insert a new theory of defense into the application for a VSSR award. Rather, the magistrate used the discussion to further illustrate the lack of proximate cause in the evidence before the commission. *Page 3 
 {¶ 5} Relator's third objection contends "[t]he magistrate compounds his errors by further relying upon the precedent of State ex rel. Harrisv. Indus. Comm. (1984), 12 Ohio St.3d 152." (Objections, iv.) Relator contends the "factual situation does not apply to the present case in review." Id. The magistrate, however, did not suggest the factual situation applies to the present case. Rather, the magistrate usedHarris to demonstrate that "[t]he commission's interpretation of the safety rule is consistent with the court's interpretation [of the same safety rule] in Harris." (Magistrate's Decision, ¶ 35.) By contrast, the magistrate noted, "[r]elator's interpretation of the rule is not consistent" because "the safety rule at issue here was never intended to prevent the type of accident that occurred in this case. Compliance with the safety rule, as properly interpreted by the commission, would not have prevented the fatal accident." Id.
 {¶ 6} Lastly, relator contends that "[i]f the present decision by the magistrate in this case is upheld, the magistrate has effectively revoked the long standing and well accepted authority of State ex rel.Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481, that requires the Staff Hearing Office[r] to detail the facts he reviews in the case and the legal logic he uses in making a decision." (Objections, v.) Contrary to relator's contentions, the staff hearing officer complied with Mitchell in stating the evidence relied on and setting forth the legal premise for the decision. Moreover, the staff hearing officer's decision is correct: the fatal injury would have occurred even if the control switch were locked into the "on" position because locking the control switch to the "on" position would not have prevented the solenoid on the pneumatic valve from failing and allowing the doors to shut onto relator's spouse, causing his death.
 {¶ 7} Relator's objections are overruled. *Page 4 
 {¶ 8} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
 BROWN and FRENCH, JJ., concur. *Page 5 
 APPENDIX A MAGISTRATE'S DECISION Rendered August 6, 2007 IN MANDAMUS {¶ 9} Relator, Kimberly Metcalfe, is the surviving spouse of Nicholas E. Metcalfe, Sr. ("decedent"), who died as a result of an industrial accident that occurred in the course of decedent's employment with respondent Ultimate Systems, LTD ("employer"). *Page 6 
 {¶ 10} In this original action, relator requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her application for an award for alleged violations of specific safety requirements ("VSSR") and to enter a VSSR award against the employer.
Findings of Fact: {¶ 11} 1. On August 15, 2002, decedent was killed in an industrial accident that occurred in the course of his employment with the employer.
 {¶ 12} 2. Thereafter, decedent's surviving spouse, relator herein, filed an industrial claim which was certified by the employer and was assigned claim number 02-844739.
 {¶ 13} 3. On August 11, 2004, relator filed an application for a VSSR award. In her application, relator alleged violations of three specific safety requirements. However, only the specific safety requirement found at former Ohio Adm. Code 4121:1-5-05(D)(2) is at issue here.
 {¶ 14} 4. The VSSR application prompted an investigation by the Safety Violations Investigation Unit ("SVIU") of the Ohio Bureau of Workers' Compensation. The SVIU investigator issued a report on January 10, 2005. The report contains exhibits and a multi-paragraphed "discussion" which states in pertinent part:
 [Two] This Investigator observed and photographed the involved bulk bag loading system consisting of a weigh hopper (U410), pellet feed system (U411), wet auger (U432), and mixer (U433). * * * The bulk bag loading system is used to mix rubber and polyurethane to produce flooring material.
 [Three] The employer stated that Decedent Nicholas E. Metcalfe, Sr. was employed as a material handler/laborer at the time of the August 15, 2002 incident. The employer continued that Mr. Metcalfe was in the process of scraping out the inside of the mixer with a company supplied Stanley three- *Page 7 
inch knife while inside the weigh hopper above the mixer. The employer further stated that the pneumatic valve that holds the doors of the weigh hopper in the open position failed and Mr. Metcalfe was caught inside the weigh hopper and fatally injured. The employer indicated that Mr. Metcalfe had properly locked out the power to the mixer and the keys to his lock were later found in his pocket. The employer continued that Mr. Metcalfe was trained to clean the mixer while standing along side of it and he should not have been standing in the mixer or inside the weigh hopper. The employer further indicated that Mr. Metcalfe's actions placed him in a position where he should not have been.
 [Four] This Investigator observed that the bulk bag loading system is equipped with a ladder accessible metal platform and the mixer and weigh hopper can only be accessed while utilizing the platform. This Investigator observed that the main control panel for the bulk bag loading system is located at ground level. This Investigator also observed that there is a disconnect switch for the mixer located on the metal platform. The Decedent's lock was found on the mixer disconnect switch after the incident. It appears that the Decedent had taken the necessary steps to ensure that the power to the mixer was locked out.
 [Five] This Investigator observed that the controls for the pneumatic weigh hopper are located on the main control panel. This Investigator did not observed [sic] any controls for the weigh hopper on the metal platform. There is a knob on the main control panel that activates the pneumatic valve which opens the weigh hopper doors. The pneumatic valve is designed to hold the weigh hopper doors in the open position until the knob is turned to the closed position. The pneumatic valve had to be manually activated prior to the Decedent climbing in the mixer and inside the weigh hopper. According to reports reviewed by this Investigator, Travis Brown manually activated the pneumatic valve for the Decedent on the night of the incident of record.
 [Six] The employer stated that the only modification made to the bulk bag loading system since the time of the incident was the replacement of the faulty pneumatic valve. A Work Order submitted by the employer indicates that the pneumatic valve was replaced on August 16, 2002. It is not know[n] if the *Page 8 
pneumatic valve was bench tested to determine the cause of the failure.
 [Seven] The employer stated that there is an auger inside the mixer that is typically cleaned out every night towards the end of second shift. The employer further stated that this process can take between forty-five minutes to one and a half hours depending on the material being run. The employer indicated that the individuals involved in this process are trained to lockout the power to the mixer and to clean the mixer from the outside. It is indicated on the OSHA Worksheet that approximately one and a half months prior to the incident, employees were physically climbing inside the mixer to clean the sides of the mixer and employees were also opening the weigh hopper doors to enable them to sit inside the weigh hopper while cleaning the mixer.
 {¶ 15} 5. The VSSR application was heard by a staff hearing officer ("SHO") on November 2, 2005. The hearing was recorded and transcribed for the record.
 {¶ 16} 6. Following the November 2, 2005 hearing, the SHO issued an order denying the VSSR application. The SHO's order states in part:
 It is the finding of this Staff Hearing Officer that the widow-claimant's IC-9 Application for Additional Award for Violation of a Specific Safety Requirement be DENIED for the reason that the widow-claimant failed to prove that the employer's failure to comply with a specific safety requirement caused a compensable injury, which resulted in the death of deceased claimant, Nicholas E. Metcalfe, Sr.
 * * *
 On the recognized date of injury, of 8/15/2002, the deceased-claimant was cleaning out a mixer that was used to mix rubber and polyurethane to produce flooring material used in gyms, health clubs, etc. The mixture is typically cleaned out every night towards the end of the second shift. Cleaning the mixture can take between 45 minutes and 1 ½ hours, depending on the types of materials run at the time.
 The mixer is located on a platform which is elevated 8 feet off of the production floor. There is a disconnect switch, for the *Page 9 
mixer, located on the metal platform, while the main control panel is located at ground level. There is a weigh hopper/claim shell bucket, suspended from chains and (4) 500 pound capacity load cells mounted above the mixer.
 Mr. Metcalfe was in the process of scraping out the inside of the mixer, with a scraper supplied by the company. He was standing approximately waist-high in the mixer, with his torso and head physically in the clam shell weigh hopper above the mixer. As he was doing so, the clam shell buckets on the weigh hopper accidentally closed, causing a crush injury involving his upper chest and neck. The crush injury caused a myocardial contusion, which in turn caused the death of the decedent, Nicholas E. Metcalfe, Sr.
 Cleaning the mixer was considered to be one of the most difficult jobs in the plant. The mixer was 30 inches across, with no access on the back side, because the mixer is up tight against a guardrail. There is also a glue pot on the right side of the mixer, as well as a guardrail on the edge of the work platform on the left side of the mixer. Therefore, the only access to the mixer is from the front side of the mixer. The evidence indicates that there is only a space of approximately 9 inches between the bottom of the weigh hopper and the top of the mixer. The mixer also contains a ribbon type paddle, which is slightly less than 30 inches in diameter. This makes it very difficult to reach across the 30 inch face, through the 9 inch opening, to clean the back wall of the mixer. Therefore, deceased-claimant, Nicholas E. Metcalfe, Sr., physically climbed into the mixer to enable him to more easily scrape the semi-hardened plastic from the inside of the mixer container. To be able to work in the mixer, the deceased-claimant, or one of his co-workers (most likely Travis Brown), manually activated the pneumatic valve on the clam shell weigh hopper. * * *
 An OSHA investigation performed after the fatal accident revealed that, approximately 1 ½ months prior to the fatal injury of 8/15/2002, one of the employees suggested that opening the weigh hopper, above the mixer, would make the cleaning process easier. * * *
 It is the finding of this Staff Hearing Officer that the power to [the] bulk mixer had been properly locked out and the keys to *Page 10 
the lock were later found in the pocket of the deceased-claimant, Nicholas E. Metcalfe, Sr., after his fatal injury.
 However, it is the further finding of this Staff Hearing Officer that the pneumatic clam shell weigh hopper was not locked out at the time of the fatal injury.
 One of the injured worker's co-workers, Travis Brown, was on a ladder cleaning the wet auger, while Nicholas Metcalfe was cleaning the mixer. He heard the deceased injured worker yell and he ran up to the mixer. He saw that the weigh hopper clam shell door[s] had closed on Nicholas Metcalfe, Sr. Therefore, he ran back down to the control panel, to see if the switch had been accidentally turned to the closed position. When he got there, he found that the switch, which controlled the weigh hopper clam shell doors, was still in the "On-Open" position. Therefore, the weigh hopper clam shell bucket doors should have still been open and not have closed on the deceased claimant, Nicholas E. Metcalfe, Sr. Therefore, Travis Brown unplugged the air supply line, which feeds all of the pneumatic controls, to remove the force from the cylinders that operate the clam shell bucket doors. That allowed Travis Brown and Williams [sic] Barnes to physically open the doors enough to free Nicholas Metcalfe, Sr. The rescue squad then removed Nicholas Metcalfe from the mixer and placed him on a straight board, on the platform. A fork lift was then used to lower him from the platform to the floor.
 It was subsequently determined that a solenoid on the pneumatic valve, which controls the clam shell doors of the weigh hopper to hold them in an open position, had failed. The failed pneumatic valve, in turn, allowed the air pressure to bleed off from the pneumatic cylinders, causing the clam shell doors of the weigh hopper to close upon the deceased claimant.
 * * *
 * * * [A]ssuming, arguendo, that the injured worker had proven the employer's non-compliance with one of the cited Code Sections, it is the finding of this Staff Hearing Officer that the injured worker failed to establish that such a violation was the proximate cause of the injured worker's injury. As indicated above, the injured worker's co-worker, Travis Brown, specifically stated, in his written statement of 8/16/2002, that, *Page 11 
when he ran down to the control panel, the control switch for the clam shell bucket doors on the weigh hopper "was still on the `On' position which has the doors open." Therefore, even if the control switch had been locked into an "On" position, as it was found by Travis Brown, the fatal injury still would have occurred, due to the failure of the solenoid on the pneumatic valve that controls the pneumatic piston which held the doors of the weigh hopper in an open position.
 In determining proximate cause, the Hearing Officer needs to determine if the employer's non-compliance with the Specific Safety Requirement cited was a proximate cause of the claimant's injury or death. Thus, the focus is on the conduct of the employer, not the employee. It must be determined whether or not the claimant would have been injured (or injured as severely), but for the employer's non-compliance with the Specific Safety Requirement. It is the finding of this Staff Hearing Officer that the failure of the solenoid on the pneumatic valve, that controlled the doors of the weigh hopper, was a one-time malfunction that the employer had no reasonable basis to expect. The Ohio Supreme Court, in the case of State ex rel. M.T.D. Products vs. Stebbins (1975), 43 Ohio St.2d 114, held that a single malfunction of a safety device is not sufficient alone to support a finding of employer liability for a VSSR penalty. The M.T.D. Products holding was also followed by the Ohio Supreme Court in the case of State ex rel. Taylor vs. Indus. Comm. (1994) 70 Ohio St.3d 445.
 * * *
 The second Code Section cited by the widow-claimant, Ohio Administrative Code Section 4121:1-5-05(D)(2) provides the requirement that,
 "AUXILIARY EQUIPMENT . . .
 (D) Machinery Control
 (2) When machines are shut down.
 The employer shall furnish and the employees shall use a device to lock the controls in the "off" position or the employer shall furnish and the employees shall use warnings [sic] tags when machines are shut shut [sic] down for repair, adjustment, or cleaning." *Page 12 
 It is the finding of this Staff Hearing Officer that the deceased claimant, Nicholas E. Metcalfe, Sr., was involved in the process of cleaning the mixer on the bulk bag loading system at the time of his fatal injury on 8/15/2002. It is the finding of this Staff Hearing Officer that the employer did furnish and the employee did use a lock on the mixer. However, it is the further finding of this Staff Hearing Officer that the employer did not furnish a device to lock the controls on the clam shell weigh hopper. * * * Therefore, it is the finding of this Staff Hearing Officer that the employer did not furnish a device to lock controls of the clam shell weigh hopper in the "off" position at the time of the deceased claimant's injury on 8/15/2002. However, it is, once again, the further finding of this Staff Hearing [Officer] that the widow-claimant failed to meet her burden of proving that the employer's failure to comply with the requirement for furnishing such a lock-out device was the proximate cause of the deceased claimant's injury on 8/15/2002. It is the finding of this Staff Hearing Officer that the cause of the deceased claimant's injury, on 8/15/2002, was the one-time malfunction of the solenoid on the pneumatic valve which was responsible for holding open the clam shell buckets on the weigh hopper.
 * * *
 This Staff Hearing Officer has considered all evidence in the Industrial Commission file, as well as the evidence and arguments presented at the hearing on 11/2/2005. It is the specific finding of this Staff Hearing Officer that the widow-claimant, Kimberly Kay Metcalfe, has not met her burden of proving and establishing the three (3) elements necessary to receive an additional award for Violation of Specific Safety Requirement. Specifically, the widow-claimant has failed to prove that the employer's alleged failure to comply with a specific safety requirement was the proximate cause of the compensable fatal injury of 8/15/2002. It is the finding of this Staff Hearing Officer that the proximate cause of the aforesaid fatal injury was the failure of the solenoid on the pneumatic valve that controlled the pneumatic cylinders which held the doors of the weigh hopper in an open position and not the employer's failure to comply with any of the Code Sections cited by the widow-claimant on her IC-9 Application for an Additional Award for Violation of a Specific Safety Requirement. *Page 13 
 Therefore, it is the finding of this Staff Hearing Officer that the widow-claimant's IC-9 Application for an Additional Award for Violation of a Specific Safety Requirement-Fatal, filed 8/11/2004, is hereby DENIED.
(Emphasis sic.)
 {¶ 17} 7. On February 17, 2006, relator moved for rehearing pursuant to Ohio Adm. Code 4121-3-20(E). In support of rehearing, relator submitted the affidavit of Gerald C. Rennell executed February 16, 2006. The Rennell affidavit[1] states:
 * * * Had a proper pneumatic lockout device been used, the bucket doors would have closed when the pneumatic device was activated. The pneumatic lockout that is currently on the bucket's power line would have prevented the injury in question had it been used because when that device is actuated the bucket door will close because there is no pneumatic power to hold them open.
 {¶ 18} 8. On May 4, 2006, another SHO mailed an order denying relator's motion for rehearing.
 {¶ 19} 9. On August 16, 2006, relator, Kimberly Metcalfe, filed this mandamus action.
Conclusions of Law: {¶ 20} The issue is whether the commission abused its discretion in determining that any failure of the employer to comply with former Ohio Adm. Code 4121:1-5-05(D)(2) was not the proximate cause of the industrial accident. Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below. *Page 14 
 {¶ 21} Former Chapter 4121:1-5, now Chapter 4123:1-5, sets forth specific safety requirements for workshops and factories.
 {¶ 22} Former Ohio Adm. Code 4121:1-5-05, now Ohio Adm. Code4123:1-5-05, was captioned "Auxiliary equipment."
 {¶ 23} Former Ohio Adm. Code 4121:1-5-05(D), now Ohio Adm. Code4123:1-5-05(D), was captioned "Machinery control."
 {¶ 24} Former Ohio Adm. Code 4121:1-5-05(D)(2), now Ohio Adm. Code4123:1-5-05(D)(2), was captioned "When machines are shut down."
 {¶ 25} Former Ohio Adm. Code 4121:1-5-05(D)(2), now Ohio Adm. Code4123:1-5-05(D)(2), stated:
 The employer shall furnish and the employees shall use a device to lock the controls in the "off" position or the employer shall furnish and the employees shall use warning tags when machines are shut down for repair, adjusting, or cleaning.
 {¶ 26} As determined by the SHO following the November 2, 2005 hearing, most likely, one of decedent's co-workers, Travis Brown, "manually activated the pneumatic valve on the clam shell weigh hopper" so that decedent could climb into the mixer. As noted in the SVIU report, "[t]here is a knob on the main control panel that activates the pneumatic valve which opens the weigh hopper doors. The pneumatic valve is designed to hold the weigh hopper doors in the open position until the knob is turned to the closed position." The pneumatic valve that was supposed to keep the weigh hopper doors in the open position while decedent cleaned the mixer proved to be defective and allowed the air pressure to bleed off and the clam shell doors to close onto decedent. *Page 15 
 {¶ 27} The SHO found that "the pneumatic clam shell weigh hopper wasnot locked out at the time of the fatal injury." (Emphasis sic.) The SHO further found that "the employer did not furnish a device to lock controls of the clam shell weigh hopper in the `off position" at the time of the accident. (Emphasis sic.)
 {¶ 28} Further, the SHO determined:
 * * * [T]he control switch for the clam shell bucket doors on the weigh hopper "was still on the `On' position which has the doors open." Therefore, even if the control switch had been locked into an "On" position, as it was found by Travis Brown, the fatal injury still would have occurred, due to the failure of the solenoid on the pneumatic valve that controls the pneumatic piston which held the doors of the weigh hopper in an open position.
 {¶ 29} According to relator, former Ohio Adm. Code 4121:1-5-05(D)(2) mandated that the employer furnish a device to lock the controls to the weigh hopper doors in the "off" position so that the doors would in effect be locked in the closed position during the cleaning of the mixer. According to relator, had the employer furnished such a device, the accident could not have happened and thus the employer's failure to furnish such device is the proximate cause of the accident, contrary to the commission's finding. The magistrate disagrees with relator's analysis. (See relator's brief, at 8-9.)
 {¶ 30} To begin, former Ohio Adm. Code 4121:1-5-05(D)(2) does not absolutely require that the employer furnish a device to lock the controls in the "off" position while a machine is being cleaned. The rule alternatively permits the employer to furnish warning tags when a machine is shut down for cleaning. This distinction is significant in showing the flaw in relator's argument. *Page 16 
 {¶ 31} Obviously, a warning tag, had it been furnished and used, would have warned decedent's co-workers to refrain from turning the control knob that activates the weigh hopper doors while decedent was cleaning the mixer. Obviously, a warning tag could provide no warning that the pneumatic valve would fail, thus allowing the weigh hopper doors to close onto decedent.
 {¶ 32} Relator's interpretation of former Ohio Adm. Code4121:1-5-05(D)(2) is designed to eliminate the proximate cause problem for relator. Relator's interpretation of the rule unravels, however, when the rule is read in its entirety to include the warning tag option.
 {¶ 33} Thus, the SHO did not abuse its discretion, nor misinterpret the safety rule when he determined that the fatal injury would have occurred even if the "control switch" (or control knob) had been locked into the "on" position. Obviously, locking the control switch (or knob) into the "on" position, would not have prevented the failure of the solenoid on the pneumatic valve. Thus, the SHO properly pointed this out.
 {¶ 34} In State ex rel. Harris v. Indus. Comm. (1984),12 Ohio St.3d 152, 154, the court had occasion to interpret the safety rule at issue here — i.e., former Ohio Adm. Code 4121:1-5-05(D)(2). In Harris, the court states:
 The purpose of this safety rule is to guard against the possibility that a machine might turn on unexpectedly, thereby catching a repairman or another nearby person unawares. While locking controls are preferred, the alternative of using warning tags is made available to alert such persons to the fact that the machine's controls are not or cannot be locked in the "off" position and that, therefore, the machine might turn on suddenly. It was reasonable for the commission to hold that the rule does not apply when the machine is already running, because the fact of its running, itself, provides adequate warning. *Page 17 
 {¶ 35} The commission's interpretation of the safety rule is consistent with the court's interpretation in Harris. Relator's interpretation of the rule is not consistent. Clearly, the safety rule at issue here was never intended to prevent the type of accident that occurred in this case. Compliance with the safety rule, as properly interpreted by the commission, would not have prevented the fatal accident.
 {¶ 36} The SHO's order of November 2, 2005 also determined that the employer cannot be held liable for the failure of the solenoid on the pneumatic valve because it was a one-time malfunction that the employer had no reasonable basis to expect. The SHO's order cites to State exrel. M.T.D. Products v. Stebbins (1975), 43 Ohio St.2d 114, in support of its finding. Relator claims that the determination is an abuse of discretion. However, this determination by the SHO was unnecessary to his ultimate holding that relator cannot show that a violation of the safety rule was the proximate cause of the fatal accident. Thus, relator's challenge to the SHO's application of M.T.D. Products is not truly an issue before this court.
 {¶ 37} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] Rennell's earlier affidavit executed January 23, 2005, was before the SHO at the November 2, 2005 hearing. In that affidavit, Rennell indicates that he is a "safety engineer." *Page 1