THE STATE EX REL. METCALFE, APPELLANT, *v.* INDUSTRIAL COMMISSION OF

OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Metcalfe v. Indus. Comm.*,

121 Ohio St.3d 347, 2009-Ohio-1220.]

*Workers' compensation — Violation of specific safety requirement — Ohio*

*Adm.Code 4123:1-5-05(D)(2) — Commission's denial of award upheld.*

(No. 2007-2275 — Submitted February 17, 2009 — Decided March 24, 2009.)

APPEAL from the Court of Appeals for Franklin County,

No. 06AP-830, 2007-Ohio-6180.

———————————

**Per Curiam**.

**{¶ 1}** Nicholas Metcalfe died in an industrial accident. After a claim for death benefits was allowed, appellant, Kimberly Metcalfe, his widow, moved appellee Industrial Commission of Ohio for an additional award, alleging that Nicholas's employer, appellee Ultimate Systems, Ltd. ("USL"), had committed several violations of specific safety requirements ("VSSR"). The commission denied her application, and the court of appeals upheld that order, which now brings the matter here.

**{¶ 2}** USL makes flooring materials. One of its products was a rubber and polyurethane compound commonly used in gyms and health clubs. At the time of Metcalfe's accident, a bulk loading system was used to manufacture the material. The system consisted of a pellet-feed system, wet auger, weigh hopper, and mixer. The latter two are the focus of this litigation.

**{¶ 3}** The mixer was tub-shaped and approximately 32 inches deep and 30 inches across. For this particular operation, it combined a polyurethane glue mixture with dry rubber buffings from the weigh hopper, which was suspended

immediately above it. The hopper had clamshell doors that operated pneumatically to dispense the buffings.

{¶ 4}   The mixer needed daily cleaning, which was usually done near the end of the second shift.  Both management and employees described this as one of the worst jobs in the plant.  The employee assigned to the task had to scrape the semihardened plastic from the inside of the mixer.  To do this, the worker was given a scraper, an air hose to blow out the scrapings, a crock pot full of hot wax, and a brush to coat the mixer blades and the inside of the mixer with wax to reduce the likelihood that the glue mixture would adhere to the blades and mixer. The job could take between 45 minutes and one and one-half hours, depending on the type of materials run that day.

{¶ 5}   In addition to the sheer physical exertion required, the task was complicated by the layout of the equipment.  The mixer and hopper were located on an elevated platform that backed onto a wall.  The safest way to clean the mixer was for an employee to kneel on the platform's catwalk and reach into the mixer.  Unfortunately, that method was not the most effective for two reasons. First, the distance between the suspended hopper and the mixer below was only nine inches.  Second, the mixer was over two feet wide, with no access to the back side because the mixer was flush against a guardrail.  Consequently, the only access to the mixer was from the front, which, as the staff hearing officer observed, made it "very difficult to reach across the 30 inch face, through the 9 inch opening, to clean the back wall of the mixer."

{¶ 6}   To more easily and effectively clean the mixer, some employees devised a much more dangerous cleaning procedure.  Rather than clean from the outside, they would open the hopper doors to allow for clearance and then crawl into the mixer.  This method allowed the employee to sit or kneel in the mixer with his head and torso between the open hopper doors.

**{¶ 7}** Nicholas Metcalfe was cleaning the mixer this way on the night of August 15, 2002. But he could not have known that one of the valves controlling air pressure to the hopper doors had failed. Air was slowly bleeding out of the lines, and when the pressure was exhausted, the hopper doors closed, crushing him.

**{¶ 8}** Investigation revealed that Metcalfe had properly locked out the controls to the mixer. There was, however, no way for him to lock out the weigh hopper controls, one of the violations appellant alleged in her VSSR application. Former Ohio Adm.Code 4121:1-5-05(D)(2), now 4123:1-5-05(D)(2), required:

**{¶ 9}** "Auxiliary Equipment

**{¶ 10}** "* * *

**{¶ 11}** "(D) Machinery Control.

**{¶ 12}** "* * *

**{¶ 13}** "(2) *When machines are shut down.*

**{¶ 14}** "The employer *shall furnish * * * a device* to lock the controls in the 'off' position or * * * warning tags *when machines are shut down* for repair, adjusting, or cleaning." (Emphasis added.)

**{¶ 15}** A commission staff hearing officer denied the VSSR application. Although he found that USL did not furnish a device to lock the weigh hopper controls in the off position, he also found that the absence of a lockout device was not the proximate cause of Metcalfe's accident. The failure of the pneumatic valve's solenoid, he wrote, caused the hopper doors to close, so even if the controls had been locked out, it would not have prevented the air pressure from bleeding out of the lines.

**{¶ 16}** Rehearing was denied.

**{¶ 17}** Appellant petitioned the Court of Appeals for Franklin County for a writ of mandamus ordering the commission to vacate its decision and allow an award for a VSSR. The court denied the writ, finding no abuse of discretion in

the commission's conclusion that USL's noncompliance with Ohio Adm.Code 4121:1-5-05(D)(2) had not proximately caused the industrial accident.

{¶ 18} This cause is now before this court on an appeal as of right.

{¶ 19} Like the court of appeals, we find that the commission did not abuse its discretion in denying VSSR liability. The question raised by our review is whether the commission reached the right result for the wrong reason. The commission's conclusion is inherently based on a determination that Ohio Adm.Code 4121:1-5-05(D)(2) applied to these facts. We do not believe that it does.

{¶ 20} Ohio Adm.Code 4121:1-5-05(D)(2) required the employer to supply a device to lock a machine's controls in the off position "when machines are shut down for repair, adjusting, or cleaning." The fatal machine in this case was the hopper, not the mixer, and two findings in this regard are crucial. First, the staff hearing officer specifically found that part of the cleaning procedure required the employee to blow out the dust and buffings *in the weigh hopper*. This meant that regardless of whether the employee climbed into the mixer, the hopper doors still had to be open for some part of the cleaning process. Second, the commission's safety-violations investigations unit reported that for those doors to be opened and kept open, the hopper controls had to be in the on position:

{¶ 21} "There is a knob on the main control panel that activates the pneumatic valve which opens the weigh hopper doors. The pneumatic valve is designed to hold the weigh hopper doors in the open position until the knob is turned to the closed position. The pneumatic valve *had to be manually activated* prior to the Decedent climbing in the mixer and inside the weigh hopper." (Emphasis added.)

{¶ 22} Metcalfe could not, therefore, accomplish all of his assigned duties with the hopper's controls in the off position, and therefore Ohio Adm.Code

4121:1-5-05(D)(2) is inapplicable. See *State ex rel. Harris v. Indus. Comm.* (1984), 12 Ohio St.3d 152, 12 OBR 223, 465 N.E.2d 1286. In *Harris*, the printing press at issue had to be running in order to clean it. The claimant was injured while cleaning the press and asserted a violation of Ohio Adm.Code 4121:1-5-05(D)(2). The employer argued that because the press was on, it was not "shut down" for cleaning, and the regulation did not apply. The claimant, on the other hand, argued that because the press "was not engaged in the printing process," it was in effect shut down, and Ohio Adm.Code 4121:1-5-05(D)(2) controlled.

**{¶ 23}** We agreed with the employer:

**{¶ 24}** "The purpose of this safety rule is to guard against the possibility that a machine might turn on unexpectedly, thereby catching a repairman or another nearby person unawares. * * * It was reasonable for the commission to hold that the rule does not apply when the machine is already running, because the fact of its running, itself, provides adequate warning." Id at 154, 12 OBR 223, 465 N.E.2d 1286.

**{¶ 25}** As in *Harris*, Metcalfe could not have done all the cleaning tasks required with the hopper controls in the off position, and Ohio Adm.Code 4121:1-5-05(D)(2) does not apply. Appellant is not entitled to an additional VSSR award.

**{¶ 26}** For the reasons stated above, the judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————————

Larrimer & Larrimer and Thomas L. Reitz, for appellant.

Richard A. Cordray, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for appellee Industrial Commission.

Bugbee & Conkle, L.L.P., and Gregory B. Denny, for appellee Ultimate Systems, Ltd.

_____