[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 529.]

THE STATE EX REL. GO-JO INDUSTRIES, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Go-Jo Industries v. Indus. Comm.*, 1998-Ohio-23.]

*Workers' compensation—Violation of specific safety requirements—Ohio Adm.Code 4121:1-5-05(C)(2) and (D)(1), construed and applied.*

(No. 96-1018—Submitted October 13, 1998—Decided November 10, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 95APD03-324.

———————————

{¶ 1} On August 21, 1990, appellee-claimant, Rodney L. Gist, was employed as a "lead operator" of a machine for appellant, Go-Jo Industries. The process to which claimant was assigned involved the packaging of powdered soap products. The process started with a Protopak machine that filled plastic bags with soap. The bags were then put on a conveyor belt and transported to a work table. There, workers inserted small nozzles into the bags. Once the task was completed, the bags were transferred to a second conveyor, which carried them to a machine called the Jones Cartoner ("Cartoner"). The Cartoner had several functions. It unfolded a product carton, dropped the soap bag into it, and then sealed the carton. Cartons were moved within the Cartoner by a transport system. This system had a gear drive and plastic lugs or fingers that were attached to a chain that was inside the machine. Cartons were advanced by indexing the fingers via a brake clutch.

{¶ 2} As lead operator of the Cartoner, claimant had many duties, including ensuring that product requirements and quotas were met. Towards this end, there was testimony that claimant had been instructed to keep the production line moving "no matter what." In order to do so, it was imperative to immediately remove from the Cartoner partially opened L-shaped cartons.

{¶ 3} The Cartoner had a photoelectric sensor that was to stop the machine when it detected an L-carton. The sensor on this particular Cartoner had a history of occasionally failing to detect L-cartons. On such occasions, claimant had seen supervisors remove L-cartons by hand without first stopping the machine, in order to eliminate downtime.

{¶ 4} At the time of injury, the line was experiencing an unusually high number of L-cartons. For this reason, claimant positioned himself at what he considered from experience and observation of superiors to be a strategic place on the line to watch for L-cartons. Claimant spotted an L-carton and reached into the Cartoner to remove it. Before he could withdraw his hand, the transport system indexed. Lacking an accessible means of stopping the machine, claimant had his hand pulled into the system, resulting in the injury of record.

{¶ 5} After his workers' compensation claim was allowed, claimant moved appellee Industrial Commission of Ohio for additional compensation, alleging that Go-Jo had violated several specific safety requirements ("VSSRs"). Among those VSSRs alleged were Ohio Adm.Code 4121:1-5-05(C)(2) and (D)(1). Those sections provide:

"Rule 4121: 1-5-05. AUXILIARY EQUIPMENT.

" * * *

"(C) Power-driven conveyors — chain, bucket, belt, hook and screw.

" * * *

"(2) Conveyors exposed to contact.

"All conveyors, where exposed to contact, shall be equipped with means to disengage them from their power supply at such points of contact.

" * * *

"(D) Machinery control.

"(1) Disengaging from power supply.

"Means shall be provided at each machine, within easy reach of the operator, for disengaging it from its power supply. * * *"

{¶ 6} On October 22, 1993, a commission staff hearing officer ("SHO") found a violation of Ohio Adm.Code 4121:1-5-05(C)(2). Go-Jo successfully moved for rehearing. In granting the motion on March 2, 1994, a second SHO wrote:

"[T]he Motion for Rehearing [is] granted for the reason [that] it has demonstrated that the order of 10/22/93 was based on an obvious mistake of fact, in accordance with OAC 4121-3-20(G)(1)(b). The obvious mistake of fact is the finding that the machinery upon which the claimant sustained his injury was a conveyor for purposes of OAC 4121:1-5-05(C)(2).

"Based on a review of the evidence in file, it is concluded that the Jones Cartoner, which is the machinery upon which claimant was injured, is not a conveyor and it was incorrect for the Hearing Officer to rule that it was a conveyor.

"The Jones Cartoner is part of the overall production process but it actually is a self contained automated packing system which is fed materials (which in this case is [*sic*] plastic bags of soap) by a conveyor belt. After receiving the bags of soap[,] the Jones Cartoner packages the soap in containers and then these containers are fed into an out-feed conveyor system.

"Consequently, while the Jones Cartoner is separated by conveyor belts leading materials to and away from it, that area itself is not a belt driven conveyor area, but it is a packaging unit separate and apart from the conveyor belts of this production system.

"Pursuant to Industrial Commission Rule 4121-3-20, the order of October 22, 1993 is vacated. Claimant's Application is ordered set for rehearing."

{¶ 7} On rehearing, on August 22, 1994, a third SHO found a violation of Ohio Adm.Code 4121:1-5-05(C)(2) and (D)(1), writing:

"It is further the finding of the Staff Hearing Officer that the claimant's injury was the result of the failure of the employer to install a panic button or other disengagement device adjacent to the conveyor as required by 4121:1-5-05(C)(2) and (D)(1) * * *.

" * * *

"It is ruled, however, that the 'transportation system' (claimant's own choice of words) or 'transport system' (employer's choice of words) of the Jones IMV Cartoner is in fact a conveyor within any definitions of the term.

"In addition to the various dictionary definitions submitted, the undersigned specifically adopts the definition of the American Society of Mechanical Engineers * * *. Absent an Administratively adopted definition, the following is ruled authoritative:

" 'Conveyor — a horizontal, inclined, or vertical device for moving or transporting bulk material, packages, or objects, in a path predetermined by the design of the device, and having points of loading and discharge, fixed or selective. * * *'

"The undersigned rules that the 'transport system' is a 'chain conveyor' as further defined at the same citation. See also, the 'Accident Prevention Manual for Industrial Operations', 1977 Edition, pp. 696, 701 & 702, which is helpful both for its definitions and illustrations * * *.

"The affidavit of employer's enginer [*sic*] Michael Duta, is instructive: while denying that the transport [system] of the Jones Cartoner is a conveyor, he explains at Paragraph 6 that the machine's lugs are attached to 'drive chains.' Keenan Baker likewise denies that the transport system is a 'conveyor', but that it ' * * * has a gear drive, and there are plastic fingers that are attached to a chain that is internal to the machine * * *.' In a word: it is a horizontal chain conveyor pursuant to Ohio Adm.Code 4121:1-5-05.

" * * *

4

"Particular reliance is placed in the photographs at Exhibits 1[a] through 1[c] inclusive. The undersigned concludes that the same illustrate the very definition of a conveyor both as commonly understood and as defined by the American Society of Mechanical Engineers.

"[The] Employer has stipulated that until the date of injury or record, no 'means of disengagement' had been installed on the conveyor side of its Jones IMV Cartoner.

"Having found the claimant to have been injured on said Jones IMV Cartoner at its conveyor component, it is held that the same was a proximate consequence of employer's failure to install a 'panic button' as illustrated conspicuously at Exhibit 1[b] or some other means of disengagement, and that, therefore, [the] employer was in violation of OAC 4121:1-5-05(C)(2) * * *.

" * * *

"It is further independently held that [the] employer was in violation of OAC 4121:1-5-05(D)(1) in that there was no 'panic button' or other 'means of disengagement' from its power supply within easy reach of the operator. Reliance is placed in claimant's own statement both to investigator Karen Brigner and his immediately taken statement at Exhibit # 2. Particular reliance is placed in the manufacturer product illustration at Exhibit 1[C] which depicts a model performing duties apparently identical to those alleged by claimant directly opposite the site where he sustained the injury of record. Not only was the claimant the 'lead operator' by job description, he was 'any employee authorized to operate the specific equipment' as defined by OAC 4121:1-5-01(S)(24) * * *. It is clear, moreover, from Exhibit 1[C] that the manufacturer contemplated the necessity of the operator working at that site as part of his or her routine duties. His situation is clearly distinguishable from the facts of *State ex rel. Harris v. Indus. Comm.* [(1984), 12 Ohio St.3d 152, 12 OBR 223, 465 N.E.2d 1286].

" * * *

"The photograph at the top of Exhibit 1[A] demonstrates that the control panel and sole stop button in effect on the date of claimant's injury was on the other end of the machine. The same and the middle photograph demonstrate that what [the] employer admits to be another conveyor is between the site of the injury and the control box, rendering access doubly impossible. Reliance is also placed in the sworn statements of Gerald Ivery and Donald Butler as well as those of the claimant."

{¶ 8} A subsequent motion for rehearing was denied.

{¶ 9} Go-Jo filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in finding the two violations. The court of appeals was unpersuaded and denied the writ.

{¶ 10} This cause is now before this court upon an appeal as of right.

―――――――――――

*Buckingham, Doolittle & Burroughs, Timothy C. Campbell* and *Richard A. Hernandez*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Patsy Thomas*, Assistant Attorney General, for appellee Industrial Commission.

*Ben Scheerer Law Offices* and *Thomas R. Pitts*, for appellee Gist.

―――――――――――

***Per Curiam.***

{¶ 11} The two specific safety requirements before us are power-disengagement requirements. Go-Jo concedes that there was no power-disengagement device at the location where claimant was injured. At issue is the applicability of those provisions and the evidentiary support underlying the commission's determination that they were violated. For the reasons to follow, we find that the commission did not abuse its discretion in assessing these penalties.

*Ohio Adm.Code 4121:1-5-05(C)(2)*

{¶ 12} This section provides:

"All conveyors, where exposed to contact, shall be equipped with means to disengage them from their power supply at such points of contact."

{¶ 13} Go-Jo opposes, on two grounds, the commission's conclusion that the Jones Cartoner was a conveyor. Go-Jo initially argues that this conclusion was barred by the commission's March 2, 1994 order. Go-Jo contends that the March 2 order specifically found that the Cartoner was not a conveyor, and that the commission was subsequently bound by that determination. Appellees dispute the order's conclusive effect, describing the order as simply interlocutory. We agree.

{¶ 14} The March 2, 1994 order was generated by Go-Jo's request for reconsideration, and was promulgated pursuant to Ohio Adm.Code 4121-3-20(G), which permits rehearing in two instances—one of which is where there has been an obvious mistake of fact. In what is perhaps an inartfully worded order, the commission follows its conclusion that the Cartoner was not a conveyor with language setting a rehearing—the latter articulating its intent to subject claimant's VSSR application to further review. We have previously held that such a clear indicium of intent supports a finding that an order was interlocutory. See *State ex rel. Brewer v. Indus. Comm.* (1984), 12 Ohio St.3d 23, 12 OBR 20, 465 N.E.2d 389; *State ex rel. Draganic v. Indus. Comm.* (1996), 75 Ohio St.3d 461, 663 N.E.2d 929. Indeed, to consider the SHO's finding on the character of the Cartoner to be anything but nonbinding is irreconcilable with the SHO's grant of rehearing. A binding determination that the Cartoner was not a conveyor would have automatically rendered Ohio Adm.Code 4121:1-5-05(C)(2) inapplicable, eliminating the need for any further discussion.

{¶ 15} Our holding is further supported by the mechanics of Ohio Adm.Code 4121-3-20(G) itself. If reconsideration is granted, the matter goes again to hearing. It is the written order generated by *that* hearing which is, according to

the express terms of Ohio Adm.Code 4121-3-20(G)(4), deemed final. We find, therefore, that the March 2, 1994 finding was interlocutory, and, pursuant to *Draganic*, not binding upon the commission.

{¶ 16} Further, Go-Jo argues that there is not "some evidence" to support the August 22, 1994 conclusion that the Cartoner was a conveyor. Go-Jo contends alternatively that even if the Cartoner was a conveyor, it was an internal conveyor, which exempts Go-Jo from liability. Neither assertion has merit.

{¶ 17} Ohio Adm.Code 4121:1-5-05 does not define "conveyor." Interpretation of that term was, therefore, within the commission's final jurisdiction. *State ex rel. Berry v. Indus. Comm.* (1983), 4 Ohio St.3d 193, 4 OBR 513, 448 N.E.2d 134. In this instance, the SHO adopted the definition of "conveyor" put forth by the American Society of Mechanical Engineers. Under that definition, "a conveyor" is:

"[A] horizontal, inclined, or vertical device for moving or transporting bulk material, packages, or objects, in a path predetermined by the design of the device, and having points of loading or discharge, fixed or selective. Included are skip hoists, and vertical reciprocating an[d] inclined reciprocating conveyors. Typical exceptions are those devices known as industrial trucks, tractors, trailers, tiering machines (except pallet load tierers), cranes, hoists, power shovels, power scoops, bucket drag lines, trenchers, platform elevators designed to carry passengers or an operator, manlifts, moving walks, moving stairways (escalators), highway or railway vehicles, cableways, tramways, dumbwaiters, pneumatic conveyors, robots, or integral transfer devices."

{¶ 18} In finding that the apparatus at issue fell within this definition, the SHO relied on, among other things, photos of the Cartoner submitted at hearing. There was, therefore, "some evidence" supporting the SHO's finding.

{¶ 19} Go-Jo alternately responds that even if the Cartoner was correctly found to be a conveyor, it was an "internal conveyor" to which no liability attaches,

8

citing *State ex rel. Ford v. Indus. Comm.* (Oct. 6, 1992), Franklin App. No. 91AP-253, unreported, 1992 WL 281232. We again disagree.

**{¶ 20}** The *Ford* decision—which we affirmed at 67 Ohio St.3d 121, 616 N.E.2d 228—is distinguishable from this case. *Ford* involved an employee who worked in a plant powerhouse, which supplied steam to the rest of the plant by way of coal-fired boilers. Coal was carried to the boilers by a series of enclosed drag bucket conveyors. On the date of injury, Ford and a co-worker were repairing one of those conveyors.

**{¶ 21}** In order to determine which buckets were broken, Ford removed a hinged cover on top of the conveyor enclosure and observed the passing buckets as his companion operated the conveyor. When a damaged bucket was finally spotted, Ford told his co-worker to stop the machine. Ford then climbed into the conveyor before his fellow employee had a chance to "lock out" the machine's power source. Ford was killed when the conveyor was unknowingly reactivated from a remote location.

**{¶ 22}** Ford's widow alleged a violation of Ohio Adm.Code 4121:1-5-05(C)(2). Neither the commission nor the court of appeals found a violation of that section, and we affirmed that judgment. We reasoned:

"Ohio Adm.Code 4121:1-5-05(C)(2) mandates a disengagement device at points 'exposed to contact.' An object is 'exposed to contact' when its location, 'during the course of operation, is accessible to an employee in performance of his regular or assigned duty.' Ohio Adm.Code 4121:1-5-05(B)(11). [Ohio Adm.Code] 4121:1-5-05(C)(2), therefore, will not apply if the accident occurred in a spot that was not accessible during the course of operation.

"Because neither 'accessible' nor 'course of operation' is defined in the Revised or Administrative Code, the interpretation of these terms is within the commission's final jurisdiction. * * * In this case, decedent was killed inside an enclosed conveyor. If the conveyor and its attached drag buckets had been moving

at the time, decedent could not have entered the enclosure. *Only* if the conveyor was *first* stopped could decedent have gained access to the area in which he died. Given the commission's duty to strictly construe specific safety requirements in the employer's favor * * *, the commission did not abuse its discretion in finding that a location which is accessible only during cessation of operation was not 'accessible' in the 'course of operation,' and was not made so merely because the conveyor *subsequently* started running." (Citations omitted; emphasis *sic.*) *Id.*, 67 Ohio St.3d at 122-123, 616 N.E.2d at 229-230.

{¶ 23} The basis for our decision in *Ford* is inapplicable here. The decision in *Ford* did not rest on the mere fact that the conveyor was enclosed. Our decision instead was based on the inaccessibility of the disengagement device during the course of operation. Here, the location of the accident was readily accessible to claimant during the course of the Cartoner's operation. Thus, the circumstances that excused a violation of Ohio Adm.Code 4121:1-5-05(C)(2) in *Ford* do not exist here.

{¶ 24} Considering all of the above, we rule that the commission did not abuse its discretion in finding a violation of Ohio Adm.Code 4121:1-5-05(C)(2).

*Ohio Adm.Code 4121:1-5-05(D)(1)*

{¶ 25} This section provides:

"Means shall be provided at each machine, within easy reach of the operator, for disengaging it from its power supply."

{¶ 26} In response to the finding of noncompliance, Go-Jo asserts two defenses: (1) that claimant was not the Cartoner's "operator," and (2) the practical impossibility of compliance. We find neither contention to be persuasive.

{¶ 27} Go-Jo initially argues that because the Cartoner was automated, it had no "operator," thereby removing claimant from the scope of Ohio Adm.Code 4121:1-5-05(D)(1)'s protection. This contention, however, is undermined by our recent decision in *State ex rel. Scott Fetzer Co., Halex Div. v. Indus. Comm.* (1998),

10

81 Ohio St.3d 462, 692 N.E.2d 195. In *Fetzer*, the claimant, as here, had several responsibilities related to the employer's machine. During the course of those duties, claimant was severely injured when the machine's dies closed on him.

{¶ 28} His employer asserted the automated nature of the machine as a defense—a defense that we rejected, writing:

"Fetzer also argues that claimant was not entitled to the protection of Ohio Adm.Code 4121:1-5-11(D)(6) because he was the 'tender,' not the 'operator' of the machine. This contention fails as well. Regardless of what Fetzer chose to call claimant, he was actively involved in the machine's operation. Claimant started, inspected, and cleaned the die. He operated the linkage mechanism and set die heights. He oiled the die and checked for defective parts. He was responsible for lodged parts and correcting malfunctions. He was not, therefore, a casual observer with no responsibility for or participation in the machine's function." *Id*. at 466, 692 N.E.2d at 197-198.

{¶ 29} The same principles are equally applicable here. Neither the Cartoner's automation nor the necessity for mobility in claimant's performance of his job duties precludes a finding that he was indeed the machine's "operator."

{¶ 30} Go-Jo also cites *State ex rel. Owens-Corning Fiberglas Corp. v. Indus. Comm.* (1980), 62 Ohio St.2d 145, 16 O.O.3d 165, 404 N.E.2d 140, to support its position. In *Owens-Corning*, the claimant worked on an assembly line, folding fiberglass batts as they passed by on a conveyor belt. The next employee removed the fiberglass batts and stacked them, whereupon a third worker transferred the fiberglass batts to an adjacent packing machine. While claimant was working at a separate conveyor, he somehow placed his foot onto the packing machine and was hurt.

{¶ 31} In alleging a violation of the same specific safety requirement now before us, claimant in *Owens-Corning* alleged that he was the operator of the packing machine. We disagreed with claimant's argument that the term "operator"

applied to everyone "who work[s] at a machine and whose activity is necessary for [the machine's] operation." *Id*. at 146, 16 O.O.3d at 166, 404 N.E.2d at 141. Stressing that claimant was working at a conveyor separate from the packing machine, we found that claimant was not covered by the safety provision.

{¶ 32} Go-Jo's reliance on *Owens-Corning* is misplaced. In the case at bar, claimant was working *at* the machine which injured him—the Jones Cartoner. This is not a situation where claimant was injured by equipment apart from that at which he was working. *Owens-Corning* does not, therefore, compel a finding that claimant was not the "operator" of the Cartoner. Accordingly, we find no abuse of discretion in this regard.

{¶ 33} Finally, Go-Jo directs us to the following passage from *State ex rel. Harris v. Indus. Comm*. (1984), 12 Ohio St.3d 152, 154, 12 OBR 223, 225, 465 N.E.2d 1286, 1288:

"It would be impossible to comply with Ohio Adm.Code 4121:1-5-05(D)(1) if the controls had to be within easy reach of all possible positions in which the operator could find himself around the machine. The commission acted reasonably in interpreting the rule to refer to the position in which the operator is normally situated."

{¶ 34} *Harris* articulates an important workers' compensation ruling. However, where—as here—there is "some evidence" supporting the conclusion that claimant's presence at the site of injury was not abnormal, irregular, or unusual in the performance of his duties, the commission did not abuse its discretion in distinguishing *Harris*.

{¶ 35} For all of these reasons, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

January Term, 1998

———————————