[Cite as *State ex rel. Prime Roof Solutions, Inc. v. Indus. Comm.*, 2024-Ohio-5221.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Prime Roof Solutions, Inc., | : | |
| Relator, | : | No. 22AP-523 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on October 31, 2024

**On brief:** *Tod T. Morrow*, and *Darrell N. Markijohn*, for relator.

**On brief:** *Gould Law*, *LLC*, and *Craigg E. Gould*, for respondent Mauricio Rivera.

**On brief:** *Dave Yost*, Attorney General, and *David M. Canale*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

JAMISON, J.

{¶ 1} Relator, Prime Roof Solutions, Inc. ("Prime Roof"), brings a mandamus action requesting this court issue a writ of mandamus ordering respondent, the Industrial Commission of Ohio ("commission"), to vacate its order finding Prime Roof had violated a specific safety requirement ("VSSR"), and that said violation was the proximate cause of injuries to respondent, Mauricio Rivera.

{¶ 2} The underlying facts are largely undisputed. On April 9, 2018, Rivera was part of a Prime Roof crew performing repairs on a leaking roof. The roof contained skylights which were flush with the roof but not load bearing. Two crewmembers were

installing safety anchors for use with lanyards and harnesses, and Rivera and another crewmember were walking around the roof inspecting for leaks. The project manager was also on the roof. Safety equipment was provided, but none of the crewmembers wore it because they ascended the roof before a safety anchor was installed. A few minutes after Rivera accessed the roof, he fell through a skylight and plunged 18 feet to the concrete floor.

{¶ 3} The commission granted Rivera a VSSR award for a violation of Ohio Adm.Code 4123:1-3-03(J), for failure to provide safety equipment. On July 23, 2022, the commission denied Prime Roof's motion for rehearing, and denied Prime Roof's motion for reconsideration on August 17, 2022. On August 26, 2022, Prime Roof filed a complaint for a writ of mandamus.

{¶ 4} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found the commission did not abuse its discretion and that some evidence supported the additional VSSR award under Ohio Adm.Code 4123:1-3-03(J). Accordingly, the magistrate recommends we deny Prime Roof's request for a writ of mandamus.

{¶ 5} Prime Roof filed the following objections to the magistrate's decision:

> I. The magistrate erred in finding that Prime Roof failed to provide fall protection equipment to the injured worker where Prime Roof provided fall protection to the jobsite, but the injured worker fell while he was assisting in the installation of the fall protection system.
>
> II. The magistrate erred in determining that interim or alternative means of protection could have been used when there was no evidence in the record to support that determination, and it was based entirely upon speculation.
>
> III. The magistrate erred in denying relator's mandamus petition where there is no dispute that fall protection equipment was available to the claimant, but he failed to utilize it before looking for leak and anchorage point locations.
>
> IV. The VSSR application should be remanded to the Industrial Commission for a re-hearing to address the feasibility and relevance of interim or alternative fall protection procedures.

The commission and Rivera each filed a memorandum in opposition to Prime Roof's objections.

**{¶ 6}**   In ruling on objections to a magistrate's decision, we conduct an independent review to ensure the magistrate "properly determined the factual issues and appropriately applied the law."  Civ.R. 53(D)(4)(d).  We "may adopt or reject a magistrate's decision in whole or in part, with or without modification."  Civ.R. 53(D)(4)(b).

**{¶ 7}**   To prevail in a VSSR claim, a claimant must show that the employer failed to comply with a specific safety requirement and that the failure was the proximate cause of the injury.  *State ex rel. Jeep Corp. v. Indus. Comm. of Ohio*, 42 Ohio St.3d 83 (1989).  We consider the interpretation of a specific safety requirement de novo and without any deference to the commission's determination.  *State ex rel. Hildreth v. Larose*, 174 Ohio St.3d 33, 2023-Ohio-3667.

**{¶ 8}**   A reviewing court need not defer to an agency's interpretation of a statute.  *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, ¶ 3 ("it is the role of the judiciary, not administrative agencies, to make the ultimate determination about what the law means," and "the judicial branch is never required to defer to an agency's interpretation of the law") (emphasis omitted); *In re Alamo Solar I, L.L.C.*, 174 Ohio St.3d 143, 2023-Ohio-3778, ¶ 14 ("[i]f the text of a regulation is clear, then we apply it as written and stop right there," but "if we determine that the text is ambiguous, we may consider the board's interpretation only for its persuasive power"); *State ex rel. Randstad N. Am., Inc. v. Bullard*, 10th Dist. No. 22AP-688, 2024-Ohio-3169, ¶ 22 ("[w]e are not required to defer to an administrative agency's interpretation of a statute enacted by the General Assembly or application of case law issued by Ohio courts").  We note, however, the magistrate's decision states, "[t]he interpretation of a specific safety requirement is within the final jurisdiction of the commission," relying on *State ex rel. Berry v. Indus. Comm. of Ohio*, 4 Ohio St.3d 193 (1983). (Appended Mag.'s Decision at ¶ 36.)  Pursuant to the Supreme Court of Ohio's holding in *TWISM Ents.*, we strike that sentence from the magistrate's decision.

**{¶ 9}**   An award for a VSSR is "a new, separate, and distinct award" over and above standard workers' compensation benefits. *State ex rel. Newman v. Indus. Comm. of Ohio*, 77 Ohio St.3d 271, 272 (1997).  It is not covered by an employer's workers'

compensation premium. *Id.* To receive the additional award from a VSSR, a claimant must prove that: "(1) a specific safety requirement applied, (2) the employer violated that requirement, and (3) the employer's violation caused the injury." *State ex rel. Precision Steel Servs., Inc. v. Indus. Comm. of Ohio*, 145 Ohio St.3d 76, 2015-Ohio-4798, ¶ 15.

{¶ 10} Ohio Adm.Code 4123:1-3-03(J) requires an employer provide safety equipment when work is being performed more than six feet above a floor. Prime Roof argues that it is impossible and not feasible to require fall protection during the initial installation of the fall protection equipment.

{¶ 11} Impossibility is recognized as an affirmative defense to a VSSR. *State ex rel. Mosser Constr., Inc. v. Indus. Comm. of Ohio*, 61 Ohio St.3d 445 (1991). When compliance with a violation of a specific safety requirement is impossible, a VSSR award is precluded. *Id.*

{¶ 12} To establish impossibility, an employer must establish: "(1) that it would have been impossible to comply with the specific safety requirement or that compliance would have precluded performance of the work and (2) that no alternative means of employee protection existed or were available." *State ex rel. Jackson Tube Serv., Inc. v. Indus. Comm. of Ohio*, 154 Ohio St.3d 180, 2018-Ohio-3892, ¶ 20.

{¶ 13} "We generally defer to the commission's expertise in evidentiary matters and do not substitute our judgment for the commissions." *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 30. Where some evidence shows that it was not impossible for an employer to comply with a regulation, it is not an abuse of discretion for the commission to reject the employer's impossibility defense. *State ex rel. Go-Jo Industries v. Indus. Comm. of Ohio*, 83 Ohio St.3d 529 (1998) (a VSSR award was upheld when the court found that while it would have been difficult for an employer to comply, it was not impossible).

{¶ 14} Prime Roof's objections are related and shall be discussed together. Prime Roof objects to the magistrate's determination that it did not provide fall equipment and that alternate means of protection was available.

{¶ 15} Fall protection is required if a worker is on a roof more than six feet above ground and nothing relieves Prime Roof of its responsibility to provide safety equipment as directed by the relevant specific safety requirement. *State ex rel. Highfill v. Indus. Comm.*

*of Ohio*, 92 Ohio St.3d 525 (2001). The requirement is triggered when Rivera is "exposed to hazards of falling." Ohio Adm.Code 4123:1-3-03(J)(1); *see State ex rel. Taylor v. Indus. Comm. of Ohio*, 10th Dist. No. 92AP-1203, 1993 Ohio App. LEXIS 3246 (June 24, 1993).

{¶ 16} Michael Brooks, the job foreman, testified that the regulations don't require safety equipment until the actual work begins. Brooks was on the roof installing the first safety anchor while unprotected workers were walking on the roof. There is no evidence that Rivera was involved in the installation of the safety anchors.

{¶ 17} Prime Roof argues that it is impossible to provide fall protection the instant a worker gets on a roof. The Supreme Court addressed the concept of impossibility as a defense of violating a safety requirement, where a suspended flywheel fell and injured an employee. *State ex rel. Jackson Tube Serv.*, *supra*. A VSSR award was levied against the employer based, in part, on a speculative statement by the injured employee that the equipment manufacturer had a fixture that would allow for safe movement of the flywheel. *Id.*

{¶ 18} The employer submitted evidence from the manufacturer that no such fixture existed and there was not an alternative method to accomplish the task without suspending the flywheel. *Id.* The evidence served two purposes: It effectively rebutted the claimant's speculative but incorrect belief about the fixture, and it served as uncontroverted evidence that there was not an alternative procedure to accomplish the task safely. *Id.*

{¶ 19} We do not have the type of definitive evidence to prove impossibility here. Prime Roof relies on its expert, Curtis Speck, who opined that "it is neither feasible nor possible to ensure complete fall protection the moment a worker ascends to the surface of a roof. The fall protection system must first be installed." (Apr. 25, 2022 Aff. at 2.)

{¶ 20} However, the analysis doesn't end just because an employer states compliance with a safety requirement is impossible. Prime Roof had the additional burden to show no alternative means to secure workers existed, but it failed to do so. *State ex rel. Jackson Tube Serv.*, *supra*. Prime Roof has lodged an objection requesting remand to discuss alternate measures, but that ship has sailed.

{¶ 21} A roofing crew must be protected when performing work on a roof. Ohio Adm.Code 4123:1-3-03(J). Prime Roof attempts to make a distinction between actual repair work and surveying the roof for potential repair locations, but it is all effort that

should only be performed with the appropriate safety equipment. There is no exception for not wearing protective safety equipment when working on the roof. *Id.*

{¶ 22} An employer can provide safety equipment, but if the equipment is not capable of being used at the job site, "it is hardly available." *State ex rel. Greco v. Conrad*, 91 Ohio St.3d 105 (2001). *See also State ex rel. Avalotis Painting Co., Inc. v. Indus. Comm. of Ohio*, 91 Ohio St.3d 137, 139 (2001) ("A lifeline is useless if it's not in place for the employee to tie off."). Prime Roof's fall protection equipment was onsite but unusable, and therefore it failed to provide the required safety equipment.

{¶ 23} The magistrate properly determined that Prime Roof was mandated to comply with the standard because it did not show that no other means of fall protection existed or was available nor that performance was impossible. *State ex rel. Jackson Tube Serv., supra.* Likewise, the affirmative defense of impossibility is not established. *Id.*

{¶ 24} After review of the magistrate's decision, an independent review of the record, and due consideration of the objections to the magistrate's decision, we find the magistrate has properly determined the facts and appropriately applied the law with the exception of the modification above pursuant to *TWISM Ents.* at ¶ 3. Accordingly, we adopt the magistrate's decision as our own, including findings of fact and conclusions of law as modified. Therefore, we overrule Prime Roof's objections and deny the request for a writ of mandamus.

*Objections overruled*;
*writ of mandamus denied.*

LUPER SCHUSTER and EDELSTEIN, JJ., concur.

# APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Prime Roof Solutions, Inc., | : | |
| Relator, | : | |
| v. | : | No. 22AP-523 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |
| | : | |

MAGISTRATE'S DECISION

Rendered on April 23, 2024

*Tod T. Morrow,* and *Darrell N. Markijohn*, for relator.

*Gould Law, LLC,* and *Craigg E. Gould*, for respondent Mauricio Rivera.

*Dave Yost,* Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 25} Relator, Prime Roof Solutions, Inc. ("employer"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission"), to vacate its order that found the employer violated a specific safety requirement ("VSSR").

Findings of Fact:

{¶ 26} 1. On April 9, 2018, Mauricio A. Rivera ("claimant") was injured during the course of his employment with the employer.

{¶ 27} 2. According to the July 27, 2020, investigation report by the Ohio Bureau of Workers' Compensation ("BWC") Safety Violations Investigation Unit and testimony presented at hearing, the employer was hired to perform roof repairs on a building with a pitched roof and flush-mounted skylights that were different in color than the surrounding metal roof. The crew working that day included supervisor Corey Devitt, foreman Michael Brooks, claimant, and two other laborers. The crew entered the building and attempted to identify leaks in the skylight in the roof and then proceeded outside to install safety-line anchors on the roof and inspect the exterior roof for leaks. Brooks reviewed with the crew that the skylights were not loadbearing and were incredibly hazardous. Brooks testified that the claimant was tasked with inspecting the roof for repairs and coming up with a plan for repairs, while others accessed the tie off and anchorage points to install safety anchors for use with lanyards and harnesses. Claimant did not have any safety equipment in use while he inspected the roof for leaks. Devitt testified that when he arrived at the building, two crew members were already on the roof, and one was installing an anchor point. Brooks testified that about 15 to20 minutes after they climbed onto the roof, while Brooks was installing the first safety-line anchor, claimant stepped on a skylight and fell 18 feet below onto a concrete floor. Claimant's workers' compensation claim was allowed for a multitude of injuries resulting from the fall.

{¶ 28} 3. On January 21, 2020, claimant filed an application for VSSR with the commission, alleging the employer violated Ohio Adm.Code 4123:1-3-03(J) (body belts, harnesses, lifelines, and lanyards), Ohio Adm.Code 4123:1-3-03(L) (safety nets), Ohio Adm.Code 4123:1-3-04(D) (holes and openings), and Ohio Adm.Code 4123:1-3-09(F)(2) (catch platforms for pitched and flat roofs).

{¶ 29} 4. On April 27, 2022, a hearing was held before a staff hearing officer ("SHO"). At the hearing, claimant withdrew the violation of Ohio Adm.Code 4123:1-3-03(L) (safety nets). On May 13, 2022, the SHO issued an order that granted in part and denied in part the VSSR application, finding no violation of Ohio Adm.Code 4123:1-3-04(D) (holes and openings) or Ohio Adm.Code 4123:1-3-09(F)(2) (catch platforms for pitched and flat

roofs), but finding a violation of Ohio Adm.Code 4123:1-3-03(J) (body belts, harnesses, lifelines, and lanyards). The SHO concluded the following, in pertinent part: (1) Ohio Adm.Code 4123:1-3-09(F)(2) pertaining to flat roofs does not apply; (2) because the skylight was not an opening or hole, Ohio Adm.Code 4123:1-3-04(D) does not apply; (3) although safety harnesses and lanyards were available at the site, there was nowhere to attach the harness and lanyard, so they were not available for use; (4) there is no evidence that claimant was involved in placing the anchors at the time of his fall; (5) the crew was on the roof prior to the installation of the anchors; and (6) the required personal protective equipment was not "provided"; thus, there was a violation of Ohio Adm.Code 4123:1-3-03(J)(1).

{¶ 30} 5. The employer filed a request for rehearing, which the commission denied on July 23, 2022.

{¶ 31} 6. The employer filed a motion for reconsideration, which the commission denied on August 17, 2022.

{¶ 32} 7. On August 26, 2022, the employer filed a complaint for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 33} The magistrate recommends that this court deny the employer's petition for writ of mandamus.

{¶ 34} In order for this court to issue a writ of mandamus, a relator must establish the following three requirements: (1) that relator has a clear legal right to the relief sought; (2) that respondent has a clear legal duty to provide such relief; and (3) that relator has no adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 35} To establish a VSSR, a claimant must prove that: (1) there exists an applicable and specific safety requirement in effect at the time of the injury; (2) the employer failed to comply with the requirements; and (3) the failure to comply was the proximate cause of the injury in question. *State ex rel. Trydle v. Indus. Comm.*, 32 Ohio St.2d 257 (1972).

{¶ 36} The interpretation of a specific safety requirement is within the final jurisdiction of the commission. *State ex rel. Berry v. Indus. Comm.*, 4 Ohio St.3d 193 (1983). However, because a VSSR is a penalty, it must be strictly construed, and all

reasonable doubts concerning the interpretation of the safety standard are to be construed against its applicability to the employer. *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170 (1989). The question of whether an injury was caused by an employer's failure to satisfy a specific safety requirement is a question of fact to be decided by the commission subject only to the abuse of discretion test. *Trydle*; *State ex rel. A-F Industries, ACME-FAB Div. v. Indus. Comm.*, 26 Ohio St.3d 136 (1986). When the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987). Furthermore, a safety requirement must be specific enough to plainly apprise an employer of its legal obligations to its employees. *State ex rel. Frank Brown & Sons, Inc. v. Indus. Comm.*, 37 Ohio St.3d 162 (1988).

{¶ 37} Ohio Adm.Code 4123:1-3-03(J) provides, in pertinent part:

(J) Body belts, harness lifelines and lanyards.

(1) Lifelines, body belts or harnesses and lanyards shall be provided by the employer, and it shall be the responsibility of the employee to wear such equipment when exposed to hazards of falling where the operation being performed is more than six feet above ground or above a floor or platform, except as otherwise specified in this chapter, and when required to work on stored material in silos, hoppers, tanks, and similar storage areas. Lifelines and body belts or harnesses shall be securely fastened to the structure and shall sustain a static load of no less than three thousand pounds.

{¶ 38} In the present matter, the employer asserts that the commission erred and abused its discretion when it found that the employer failed to provide fall protection equipment to claimant because claimant fell while the crew was in the process of installing the fall protection system itself, which involved identifying leaks and the scope of work, identifying fall protection anchor points in the areas where leaks were located, and installation of the anchors. The employer argues that it could not simply place an anchor at one location and expect that location to work for the entire project, so identifying where the leaks are is first necessary so the crew knows where to locate the anchor points. The employer contends claimant was part of the fall protection installation process himself because he had to locate the leaks before the anchors could be installed. The employer

claims it is impossible to provide fall protection to workers immediately upon ascension to the roof, and it is obvious that workers have to be without fall protection for a brief period while the system is installed.

{¶ 39} The magistrate finds the employer's arguments unavailing. Although the employer argues that claimant's inspection of the roof for the leaking areas was part of the fall protection installation process, and claimant first had to identify the leaks before the fall protection system could be installed, the employer has not demonstrated that claimant could not have been otherwise securely fastened to the structure prior to starting the task of identifying leaks. The requirements in Ohio Adm.Code 4123:1-3-03(J)(1) are clear and unambiguous: a worker performing an operation more than six feet above ground and exposed to hazards of falling must be provided lifelines and body belts or harnesses that are securely fastened to the structure. Claimant was performing the task of identifying leaks on a roof where there existed fall hazards, and he was not securely fastened to the structure with a lifeline and harness, which constitutes a VSSR. Although other scenarios might prompt a more difficult determination as to precisely when the safety requirements under Ohio Adm.Code 4123:1-3-03(J)(1) are triggered, the circumstances under which claimant was injured here do not resemble those hypothetical scenarios. Even if claimant's activities were part of the initial process of installing the fall protection system the employer chose to utilize on this particular project, there are other methods of protecting workers from falls, and the employer could have used one of these other methods while claimant performed his tasks. The commission suggests, for example, employers may protect workers against falls by looping lines across the top of a roof to the other side of the building and anchoring the line to a secure or heavy object, and the employer here could have used this method to temporarily protect claimant during the initial setup of the anchors. As another example, an employer could set up a temporary anchor in the nearest, safest location to the point of entry, putting the minimum numbers of workers at risk in doing so, before letting other workers on the roof. The testimony here established that Brooks was installing an anchor when claimant fell, and one crew member had already installed an anchor; thus, it appears possible that the employer could have first installed an anchor for the first employee to utilize and then installed more anchors for other workers to use as they entered the roof. Instead, numerous workers were allowed to perform job tasks on the roof in close proximity

to what was described as incredibly hazardous skylights without any fall protection for at least 15 to 20 minutes. While this incremental process may be tedious or increase costs if the initial anchors must be moved or additional anchors must be installed once leaks are identified in other areas of the roof beyond the reach of the initial anchors, Ohio Adm.Code 4123:1-3-03(J)(1) simply does not grant an exception to the safety requirement while workers are performing exploratory, investigative, or "set-up" activities, and the employer is under a duty to protect workers from falling when there is a falling hazard.

{¶ 40} As for the defense of impossibility raised by the employer, the Supreme Court of Ohio has held that to establish impossibility as an affirmative defense to an application for an additional award for a VSSR, an employer must show (1) that it would have been impossible to comply with the specific safety requirement or that compliance would have precluded performance of the work and (2) that no alternative means of employee protection existed or were available. *State ex rel. Jackson Tube Serv. v. Indus. Comm. of Ohio*, 154 Ohio St.3d 180, 2018-Ohio-3892 (syllabus). The employer here has not proven these elements. As explained above, it would not have been impossible for the employer to comply with Ohio Adm.Code 4123:1-3-03(J)(1) in this situation, and alternative means of protection existed. As the two examples given above describe, the employer could have used a different method of protecting claimant from falling while he was performing the initial task of identifying leaks, or the employer could have, at a minimum, used the same system but installed it incrementally as workers entered the roof to inspect the roof and install the permanent system. For all of the foregoing reasons, the magistrate finds the commission's determination was not an abuse of discretion and was supported by some evidence.

{¶ 41} Accordingly, it is the magistrate's recommendation that this court should deny the employer's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.