[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Prime Roof Solutions, Inc. v. Indus. Comm.*, Slip Opinion No. 2025-Ohio-4399.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-4399

THE STATE EX REL. PRIME ROOF SOLUTIONS, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Prime Roof Solutions, Inc. v. Indus. Comm.*, "Slip Opinion No." 2025-Ohio-4399.]**

*Workers' compensation—Mandamus—Violations of specific safety requirements ("VSSRs")—Adm.Code 4123:1-3-03(J)(1) (requiring that fall-protection gear be provided to employees exposed to hazards of falling)—Employer failed to establish that Industrial Commission failed to perform a legal duty or abused its discretion in granting claimant's application for VSSR award for violation of Adm.Code 4123:1-3-03(J)(1)—Some evidence supports commission's finding that claimant was not assisting in installation of fall-protection system when he fell—Court of appeals' judgment denying writ affirmed.*

(No. 2024-1657—Submitted June 3, 2025—Decided September 23, 2025.)

APPEAL from the Court of Appeals for Franklin County,

No. 22AP-523, 2024-Ohio-5221.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Appellee Mauricio Rivera was injured when he fell through a roof while employed by appellant, Prime Roof Solutions, Inc. Under Ohio's workers' compensation system, an employee may be entitled to compensation in addition to workers' compensation benefits when the employee's workplace injury resulted from an employer's violation of a specific safety requirement ("VSSR"). *See* Ohio Const., art. II, § 35; R.C. 4121.47. Rivera applied for a VSSR award, alleging that his injury resulted from Prime Roof's violation of Adm.Code 4123:1-3-03(J)(1), which requires that fall-protection gear be provided to employees exposed to hazards of falling. Appellee Industrial Commission of Ohio granted Rivera's application, finding that Prime Roof had failed to provide him with the required fall-protection gear. Prime Roof brought this action asking the Tenth District Court of Appeals for a writ of mandamus directing the commission to vacate its order and deny Rivera's application for a VSSR award. The Tenth District denied the writ, and Prime Roof has appealed.

{¶ 2} Because some evidence in the record supports the commission's decision, we affirm the Tenth District's judgment.

## I. BACKGROUND
### A. Rivera's Injury and VSSR Application

{¶ 3} In April 2018, Prime Roof employed Rivera as a roofer on a project repairing a low-sloped, metal roof. He was injured on the project's third day while two other Prime Roof crew members, including the project's foreman, were in the process of installing anchors on an unrepaired portion of the roof. The anchors were part of Prime Roof's fall-protection system and would be securely fastened to

2

bar joists under the roof. Each employee would then put on a harness with a lanyard that would connect to an anchor to help prevent falls or injuries.[1]

{¶ 4} While the foreman was installing the first anchor, Rivera stepped onto a skylight and fell through the roof almost 18 feet to a concrete floor. Although Prime Roof had ensured that harnesses and lanyards were transported to the job site, Rivera was not wearing any such equipment when he fell. Rivera does not recall details about the fall, but according to the foreman, Rivera was on the roof at that time to identify leak locations. Rivera's workers' compensation claim was allowed for various conditions relating to his brain, head, facial bones, eyes, fingers, right shoulder, and ribs.

{¶ 5} In January 2020, Rivera filed an application for a VSSR award. He alleged that Prime Roof had violated four specific safety requirements set forth in the Administrative Code, although he later withdrew one alleged rule violation.

### B. The Commission Grants Rivera's VSSR Application

{¶ 6} A staff hearing officer ("SHO") presided over a hearing for the commission, hearing testimony from Rivera and several witnesses for Prime Roof, including a supervisor and the project foreman.

{¶ 7} In May 2022, the SHO denied Rivera's VSSR application with respect to two of the alleged rule violations but found that Prime Roof had violated Adm.Code 4123:1-3-03(J)(1), which at the time of Rivera's injury provided:

> Lifelines, safety belts or harnesses and lanyards shall be provided by the employer, and it shall be the responsibility of the

---

1. At the time of Rivera's injury, the Administrative Code defined "harness" as a "device, worn around the body, which, by reason of its attachment to a lanyard and lifeline or a structure, will prevent an employee from falling." Former Adm.Code 4123:1-3-03(B)(7), 2010-2011 Ohio Monthly Record 2-2252, 2-2253 (effective Jan. 1, 2011). "Lanyard" was defined as "a flexible line of rope, wire rope, or strap which generally has a connector at each end for connecting the body belt or body harness to a life line or anchorage." Former Adm.Code 4123:1-3-03(B)(2), 2010-2011 Ohio Monthly Record, at 2-2252.

employee to wear such equipment when exposed to hazards of falling where the operation being performed is more than six feet above ground or above a floor or platform, except as otherwise specified in this chapter . . . . Lifelines and safety belts or harnesses shall be securely fastened to the structure and shall sustain a static load of no less than three thousand pounds.[2]

Former Adm.Code 4123:1-3-03(J)(1), 2010-2011 Ohio Monthly Record 2-2252, 2-2255 (effective Jan. 1, 2011).

{¶ 8} The SHO determined that although Prime Roof had ensured that harnesses and lanyards were transported to the job site, the employer had failed to "provid[e]" the equipment as required by the rule because Rivera had no ability to use the equipment. The evidence, according to the SHO, indicated that Rivera was on the roof prior to installation of the anchors but that he was not involved in placing the anchors. The SHO concluded that even if Rivera had been wearing a harness, "there was nowhere to tie off"—meaning that there was no anchor to which Rivera could attach a harness and lanyard—and that "[t]he equipment is useless and the safety rule is not satisfied if the harness and lanyard c[an]not be used for their intended purpose." After finding that Prime Roof had violated Adm.Code 4123:1-3-03(J)(1), the SHO awarded Rivera additional compensation in the amount of 15 percent of the maximum weekly rate.

{¶ 9} Prime Roof filed a motion for a rehearing, which was denied, and a subsequent motion for reconsideration, which was also denied.

---

2. "[V]ertical [l]ifeline" was defined as "a rope, suitable for supporting one person, to which a lanyard or safety belt (or harness) is attached." Former Adm.Code 4123:1-3-03(B)(3), 2010-2011 Ohio Monthly Record at 2-2252.

### C. The Tenth District Denies Prime Roof's Request for a Writ

{¶ 10} Prime Roof filed a complaint in the Tenth District for a writ of mandamus directing the commission to vacate the SHO's order granting Rivera the VSSR award. Prime Roof claimed that the SHO's finding that Prime Roof had violated Adm.Code 4123:1-3-03(J)(1) was contrary to law and produced an illogical result. Although it had provided harnesses and lanyards to the jobsite, Prime Roof argued, Rivera was injured while he and the other crew members were in the process of installing the fall-protection system. Specifically, Prime Roof asserted that before Rivera fell, he was identifying the location of roof leaks and the crew would have relied on the leak locations to determine the appropriate placement for the anchors. According to Prime Roof, it was impossible to provide fall-protection gear to employees before they installed the fall-protection system.

{¶ 11} The Tenth District referred the case to a magistrate, who recommended that the writ be denied. 2024-Ohio-5221, ¶ 33-41 (10th Dist.). The magistrate concluded that Prime Roof had violated Adm.Code 4123:1-3-03(J)(1) because Rivera was exposed to hazards while on the roof and was not securely fastened to the structure by a lifeline and harness. *Id*. at ¶ 39. Even if Rivera had been assisting in installing the fall-protection system, the magistrate noted, Prime Roof could have used alternative methods to temporarily protect Rivera during the set-up phase. *Id*. at ¶ 39-40.

{¶ 12} Prime Roof objected to the magistrate's decision, but the Tenth District overruled the objections, adopted the magistrate's decision (with the exception of striking one sentence that is not relevant to this appeal), and denied the writ. *Id.* at ¶ 24. Prime Roof has timely appealed.

## II. STANDARDS OF REVIEW

### A. Mandamus Standard

{¶ 13} To be entitled to a writ of mandamus, a relator must show by clear and convincing evidence that it has a clear legal right to the requested relief, that

the commission has a clear legal duty to provide that relief, and that the relator has no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 2021-Ohio-3669, ¶ 10. In a direct appeal of the judgment in a mandamus action that originated in the court of appeals, we review the judgment as if the action had been originally filed here. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164 (1967).

{¶ 14} A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law, when the commission has misinterpreted a statute, or when the commission has abused its discretion in carrying out its duties. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9. Ordinarily, "[w]here a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 1997-Ohio-181, ¶ 16. Because the commission's decision whether to grant a VSSR award does not involve a claimant's right to participate or to continue to participate in the workers' compensation fund, such a decision is not appealable under R.C. 4123.512(A) and may be challenged in a mandamus action. *State ex rel. Cassens Corp. v. Indus. Comm.*, 2024-Ohio-526, ¶ 9.

## B. VSSR Standard

{¶ 15} Article II, Section 35 of the Ohio Constitution allows for an award of additional compensation to a worker who has sustained an injury resulting from a "failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employees, enacted by the general assembly or in the form of an order adopted by [the] board."[3] *See also* R.C.

---

3. The "board" referred to in Article II, Section 35 is the State Liability Board of Awards, which was superseded in 1913 when the General Assembly created the Industrial Commission. *See State*

4121.47(A) (prohibiting an employer from violating a "specific safety rule adopted by the administrator of workers' compensation . . . or an act of the general assembly to protect the lives, health, and safety of employees"). "An award for a VSSR is 'a new, separate, and distinct award' over and above standard workers' compensation benefits" and "is not covered by an employer's workers' compensation premium." *State ex rel. Precision Steel Servs., Inc. v. Indus. Comm.*, 2015-Ohio-4798, ¶ 15, quoting *State ex rel. Newman v. Indus. Comm.*, 1997-Ohio-62, ¶ 7.

{¶ 16} To be entitled to a VSSR award, the claimant must establish (1) that an applicable specific safety requirement was in effect at the time of the injury, (2) that the employer violated the requirement, and (3) that the employer's violation proximately caused the injury. *Cassens* at ¶ 12. Because a VSSR award is in the nature of a penalty, it is "imperative that a safety requirement be specific enough to plainly apprise an employer of its legal obligations towards its employees." (Cleaned up.) *Id.* at ¶ 11.

### III. ANALYSIS

{¶ 17} As noted above, the version of Adm.Code 4123:1-3-03(J)(1) that was in effect on the date of Rivera's injury provided:

> Lifelines, safety belts or harnesses and lanyards shall be provided by the employer, and it shall be the responsibility of the employee to wear such equipment when exposed to hazards of falling where the operation being performed is more than six feet above ground or above a floor or platform, except as otherwise specified in this chapter . . . . Lifelines and safety belts or harnesses shall be securely fastened to the structure and shall sustain a static load of no less than three thousand pounds.

---

*ex rel. Engle v. Indus. Comm.*, 142 Ohio St. 425, 429 (1944), citing Am.S.B. No. 137, 103 Ohio Laws 95.

Former Adm.Code 4123:1-3-01(J)(1), 2010-2011 Ohio Monthly Record, at 2-2255. The Administrative Code defined "provide" as "to make available." Former Adm.Code 4123:1-3-01(B)(21), 2010-2011 Ohio Monthly Record 2-2250, 2-2251 (effective Jan. 1, 2011).

{¶ 18} Prime Roof asserts one proposition of law: "An employer does not violate a specific safety requirement (VSSR) requiring the employer to provide fall protection to the jobsite, where the injured worker fell while he and other crew members were in the process of installing the fall protection devices." For the following reasons, Prime Roof has not established that the commission failed to perform a legal duty or abused its discretion in granting Rivera's application for a VSSR award.

## A. Some Evidence Supports the Commission's Decision

{¶ 19} Prime Roof relies on the principle that when application of a commission rule "to a unique factual situation gives rise to a patently illogical result, common sense should prevail," *State ex rel. Harris. v. Indus. Comm.*, 12 Ohio St.3d 152, 153 (1984). Applying former Adm.Code 4123:1-3-03(J)(1) to these facts, Prime Roof contends, is contrary to common sense and produces an absurd result because a fall-protection system must first be installed before employees may attach their fall-protection gear and therefore employees must briefly work without the gear while installing the system. Prime Roof argues that the commission's interpretation of the rule renders compliance impossible because an employer cannot provide fall-protection gear to employees immediately upon their ascension to a roof and before installation of a fall-protection system.

{¶ 20} Prime Roof's argument hinges on its claim that Rivera fell while in the process of installing the fall-protection system. According to Prime Roof, to install the system, the crew had to first determine where the repair work would be performed so they could then locate proper places to install the anchors. When

Rivera fell, Prime Roof contends, he and another crew member were walking around the roof "looking for leak locations and associated anchorage points" and identifying "other areas where fall protection devices would need to be installed."

{¶ 21} The SHO found, however, that when Rivera fell, he was *not* involved in placing the anchors, and we hold that the SHO's finding is supported by some evidence in the record. During the hearing, the SHO twice asked the foreman why other crew members were on the roof while he was installing the anchors. The foreman initially answered that safety regulations do not require employees to wear fall-protection gear while setting up a job. When the SHO asked again why the other crew members were on the roof before installation of the anchors, the foreman responded: "[W]hile I'm installing the anchors so they can tie off, [the other crew members] are beginning the process of roof identification, identifying the leak issues and coming up with a game plan on how they want to go about repairing those issues."

{¶ 22} Therefore, although Prime Roof asserts that Rivera fell while assisting in the anchor-installation process, the SHO had heard evidence allowing her to conclude otherwise. Specifically, the foreman testified that Rivera was on the roof before installation of the anchors to identify leak locations and to create a plan for repairing those leaks. "Factual questions relevant to proof of a VSSR rest exclusively within the discretion of the commission." *State ex rel. Scott v. Indus. Comm.*, 2013-Ohio-2445, ¶ 12. And so long as some evidence supports the commission's order, there is no abuse of discretion and we will uphold the decision. *See State ex rel. Levitin v. Indus. Comm.*, 2023-Ohio-3559, ¶ 15.

{¶ 23} Accordingly, we need not determine whether it would be illogical or absurd to apply Adm.Code 4123:1-3-03(J)(1) to a worker installing a fall-protection system, because those are not the facts on which the SHO relied in this case. Nor is it necessary to decide whether compliance with the rule is impossible

during the set-up phase because, again, the SHO found that Rivera was not involved in placing the anchors at the time of his fall.

### B. Prime Roof's Criticisms of the Tenth District's Opinion

{¶ 24} Prime Roof also asserts that the magistrate and the Tenth District erred by discussing alternative methods that Prime Roof could have used to protect Rivera during installation of the fall-protection system. Prime Roof, however, has placed unwarranted significance on the Tenth District's references to alternative methods, which do not amount to reversible error.

{¶ 25} The magistrate identified two alternative methods that Prime Roof could have used to protect crew members during the installation process: (1) looping lines across the top of the roof to the other side of the building and anchoring the lines to a secure object or (2) incrementally installing temporary anchors as the crew members ascended to the roof, rather than allowing crew members on the roof before the permanent anchors were installed. 2024-Ohio-5221 at ¶ 39 (10th Dist.). Prime Roof argues that the magistrate's decision was based on speculation and that because neither of the alternative methods were raised before the SHO, Prime Roof never had an opportunity to rebut their feasibility.

{¶ 26} The magistrate's discussion of the two alternative methods, however, was dicta and unnecessary to his overall recommendation. It was only after finding a VSSR based on his determination that Rivera fell while identifying leaks that the magistrate went on to state that "*[e]ven if* claimant's activities were part of the initial process of installing the fall protection system . . . there are other methods of protecting workers from falls." (Emphasis added.) *Id.* at ¶ 39.

{¶ 27} The Tenth District mentioned alternative methods only when analyzing Prime Roof's impossibility defense. Specifically, the court said that to establish impossibility, Prime Roof had the burden to show that (1) it would have been impossible to comply with the specific safety requirement or that compliance would have precluded performance of the work and (2) no alternative means of

employee protection existed or were available. *Id.* at ¶ 12, 20. The court concluded that Prime Roof had failed to prove the second element of the defense and that its opportunity to do so was before the commission. *Id.* at ¶ 20.

{¶ 28} Prime Roof now criticizes the court of appeals for failing to clarify what alternative methods were available and states that it is "left guessing as to what it was required to do" and is placed in the "position of having to prove a negative." However, the court correctly noted that Prime Roof, as the employer, had the burden to prove the elements of the affirmative defense of impossibility, including that no alternative means of employee protection existed. *See id.*, citing *State ex rel. Jackson Tube Serv., Inc. v. Indus. Comm.*, 2018-Ohio-3892, ¶ 20.

{¶ 29} Prime Roof's arguments here lack merit.

### IV. CONCLUSION

{¶ 30} Because Prime Roof has failed to demonstrate that the commission abused its discretion when it issued Rivera a VSSR award, we affirm the judgment of the Tenth District Court of Appeals denying the requested writ of mandamus.

Judgment affirmed.

_____

Morrow & Meyer, L.L.C., and Tod T. Morrow, for appellant.

Dave Yost, Attorney General, and David M. Canale, Assistant Attorney General, for appellee Industrial Commission of Ohio.

Gould Law, L.L.C., and Craigg E. Gould, for appellee Mauricio Rivera.

_____